**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**--------------------------------------------------------X**

**UNITED STATES OF AMERICA,**                :

     **-V-**                :    **S-1 14 CR. 399 (ENV)**

**ABRAXIS DISCALA,  ET AL.,**                :

           **Defendants.**        :

**--------------------------------------------------------X**


## DEFENDANTS' JOINT MOTION
## FOR PRETRIAL DISCOVERY


.

**SERCARZ & RIOPELLE, LLP**
**810 Seventh Avenue, Suite 620**
**New York, NY  10019**
**(212) 586-4900**

*Attorneys for Defendant*
*Kyleen Cane*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...........................................2

   A.    The S-1 Indictment and Discovery ...........................................................2

   B.    Prior Consultation with the Government ...................................................4

ARGUMENT ......................................................................................................

I.    THE GOVERNMENT SHOULD BE DIRECTED TO PROVIDE ALL
     RULE 16 DISCLOSURES NO LATER THAN 60 DAYS PRIOR TO
     TRIAL ........................................................................................................5

II.   THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE
     RULE 404(B) EVIDENCE NO LATER THAN 60 DAYS PRIOR
     TO TRIAL ...................................................................................................9

III.  THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE ALL
     *BRADY / GIGLIO MATERIAL* NO LATER THAN 60 DAYS PRIOR TO
     TRIAL ......................................................................................................11

IV.  THE COURT SHOULD DIRECT THE GOVERNMENT TO DISCLOSE
     ITS JENCKS ACT MATERIAL NO LATER THAN 45 DAYS PRIOR
     TO TRIAL .................................................................................................13

V.   THE COURT SHOULD DIRECT THE GOVERNMENT TO
     PROVIDE IMMEDIATELY LIMITED BUT CRITICAL
     PARTICULARS .........................................................................................14

   A.    Identity of Unindicted Co-Conspirators...................................................15

   B.    Identification of Defendants' Particular Use of the Mails or Wires .......17

   C.    Alleged Misstatements............................................................................17

   D.    The Legitimacy of the Underlying Companies........................................18

   E.    Venue. .....................................................................................................19

CONCLUSION ..................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001)........................................................11

*Locker v. American Tobacco Co.*, 200 F. 973 (S.D.N.Y. 1912)............................15

*United States v. Giffen,* 379 F.Supp.2d 337, 344 (S.D.N.Y. 2004).........................5

*United States v. Badalamente*, 507 F.2d 12 (2d Cir. 1974)...................................12

*United States v. Bonventre*, 10 Cr. 228 (LTS)....................................................8, 9

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987)...................................14

*United States v. Castellano*, 610 F. Supp. 1359 (S.D.N.Y. 1985)........................19

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) ..........................................11

*United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012) .................................16

*United States v. Kahale*, 789 F. Supp. 2d 359 (E.D.N.Y. 2009) ..........................16

*United States v. Lino*, 00-cr-623 (WHP), 2001 WL 8356
    (S.D.N.Y. Dec. 20, 2000) (Pauley, J) ...............................................................10

*United States v. Nachamie*, 91 F. Supp. 2d, 565 (S.D.N.Y. 2000)...................9, 16

*United States v. Narciso*, 446 F. Supp. 252 (E.D. Mich. 1977) .....................13, 14

*United States v. Perez*, 940 F. Supp. 540  (S.D.N.Y. 1996)..................................15

*United States v. Psihos*, No. 08-cr-1026, 2009 WL 1033353
    (N.D. Ill. Apr. 14, 2009) ...................................................................................10

*United States v. Saleh*, No. 10 Cr. 623 (KTD), 2011 WL 1210107
    (S.D.N.Y. 2008)..................................................................................................10

*United States v. Torres*, 901 F.2d 205 (2d Cir. 1990) ..........................................15

*United States v. Upton,* 856 F.Supp. 727 (E.D.N.Y 1994).......................................6

*United States v. Vilar,* 530 F. Supp. 2d 616, 640 (S.D.N.Y. 2008)...............5, 8, 10

*United States v. Wedd*, 15 Cr. 616 (KBF) ..............................................................9

## Other Authorities

"Guidance for Prosecutors Regarding Criminal Discovery,"
   U.S. Dep't of Justice (Jan. 4, 2010)..............................................................11, 13

ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 454 (2009)..........12

## Rules

Federal Rules of Evidence Rule 404(b)...................................................................9

## PRELIMINARY STATEMENT

Defendants Abraxis Discala ("Discala"), Ira Shapiro ("Shapiro"), Kyleen

Cane ("Cane"), Darren Ofsink ("Ofsink") and Michael Morris ("Morris") submit this

memorandum of law in support of their motions to compel the government to disclose

(i) an Exhibit List and Marked Exhibits 60 days prior to trial; (ii) all 404(b) material

60 days prior to trial; (iii) all *Brady* Material and *Giglio* material no later than 60 days

prior to trial; (iv) Jencks Act materials 45 days prior to trial; (v) a list of all

unindicted co-conspirators or anyone else whose statements or conduct the

government will contend at trial bind the defendants; and (vi) previously demanded

particulars needed to amplify the allegations contained in the first superseding

indictment ("S-1"), no later than 60 days prior to the commencement of trial.[1]

As the Court is by now well aware, this case is complex, involving an

enormous amount and diversity of discovery material. The enormity and the diversity

of the discovery materials in this case require the government to produce the

materials requested by this motion on the schedule set forth above. Without the

requested production, the defendants cannot possibly timely prepare their defense at

trial, requiring mid-trial continuances to permit the defendants to review materials

and prepare for witness cross-examinations, despite defense counsels' diligence.

---

[1] By letters dated September 14, 2014 and July 19, 2016, defendant Shapiro served on the government extensive and detailed requests for particulars and additional discovery, a request that is joined by his codefendants. Copies of these demands are attached to this Memorandum of Law together as Exhibit A. The government has not answered Shapiro's demands for particulars at this time. Defendant Ofsink has also served a request for particulars, and Ofsink's counsel is in discussions with the government regarding his specific requests for particulars. Therefore, Ofsink does not join this motion seeking a response to Shapiro's requests, and the additional requests for particulars described in Point V below.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The S-1 Indictment and Discovery

The S-1 Indictment charges the defendants with participating in one or more

of four distinct "pump and dump" securities schemes.  The four charged schemes are

in reality four separate and distinct conspiracies, with defendant Discala alleged to be

at the center of each.  While there is some overlap in the membership of the charged

conspiracies, each scheme involves a different security, different members, different

documents, and different witnesses.  For example, defendants Shapiro, Morris and

Ofsink are alleged to have participated only in the charged scheme involving the

shares of a company named CodeSmart.   S-1 ¶¶ 22, 55.  Defendant Cane is alleged to

have participated only in the alleged "pump and dump" scheme involving the shares

of a company named Cubed.  S-1 ¶¶36, 57.[2]  Only defendants Discala and Josephburg

purportedly participated in the alleged schemes involving the shares of the companies

named Star Stream and Staffing Group.   S-1 ¶¶ 43, 44 and 47.

Each of the schemes charged in the indictment is predicated on a document-

intensive, complex allegation of fraud extending over a significant period.  As the

Court is well aware, the government has produced in discovery, over a two-year

period, a terabyte or more of data consisting of millions of documents relating to the

various allegations in the S-1 Indictment.

Moreover, in the midst of the time period charged in the S-1 Indictment, the

government obtained authorization to monitor Defendant Discala's telephone, and

---

[2]  Although Defendant Cane's name appears in paragraphs 43, 44 and 47 of the S-1 Indictment, the
government has assured her counsel that there is no evidence to link her to the alleged scheme to
manipulate the shares of Star Stream and Staffing Group described in the S-1 Indictment, and that a
redacted copy of the S-1 Indictment will be provided to the jury for its deliberations which removes
Cane's name from these paragraphs.

2

some of the Defendants' communications with him were intercepted. However, some defendants – Shapiro and Ofsink, for example – were not intercepted at all.

Given the multiplicity of conspiracies charged in the S-1 Indictment, and the length and complexity of the charged schemes, the number of documents and potential witnesses associated with each scheme is enormous. The total amount of discovery, document review and defense investigation necessary to prepare for trial is overwhelming.

It should come as no surprise that the S-1 Indictment makes clear that government's evidence against each defendant will be quite different both in nature and quantity. For example, the charged scheme to manipulate the market price of CodeSmart shares relies principally on allegedly false or misleading press releases to generate market interest in CodeSmart's shares. See S-1 at ¶¶ 24, 26 and 27. The charged scheme to manipulate the price of Cubed shares appears to be based on matched trades, electronic surveillance and the use of an escrow account which held Cubed shares. See S-1 at ¶¶ 36, 37 and 39. And the allegations concerning Star Stream and the Staffing Group focus primarily on a series of matched trades allegedly managed through text messages transmitted to and from defendant Discala's mobile phone. See S-1 at ¶¶ 44-46, 48-50.

Counsel have now done all they can to anticipate and prepare for the government's case at trial. They have waded through terabytes of documents, using only the North Star of the S-1 Indictment as their guide. Counsel for some of the defendants have listened to intercepted conversations and read intercepted text messages, focusing on communications that appear relevant, again using the

3

allegations of the S-1 Indictment as a guide, even though the S-1 Indictment is a wholly inadequate basis for trial preparation in a complex securities fraud case like this one.    In any event, the defendants and their counsel simply do not have the time to review every item produced by the government, given the government's voluminous production to date, and the diversity of the allegations each defendant faces.    That is why the discovery-related remedies this motion seeks are so necessary.

**B.    Prior Consultation with the Government**

On April 25, 2017, defense counsel met with the government to discuss trial-related disclosure issues, following which the government agreed to produce 1) an exhibit list and a copy of its exhibits four weeks prior to trial; 2) the Jencks Act material two weeks prior to trial; and 3) 404(b) material four weeks prior to trial, or even slightly before that.    While counsel commend the government for its acknowledgment that early trial-related disclosure is necessary to keep this case on track, counsel contend that the schedule proposed by the government is inadequate. For the following reasons, the defendants urge a more generous and forgiving schedule for trial-related disclosures, together with the other modest discovery-related remedies described below.

# ARGUMENT

### I. THE GOVERNMENT SHOULD BE DIRECTED TO PROVIDE ALL RULE 16 DISCLOSURES NO LATER THAN 60 DAYS PRIOR TO TRIAL

As noted above, the government has agreed to provide the following items 30 days before trial:

- the government's exhibits; and

- the government's exhibit list.

In light of the complexity, diversity and volume of the materials relevant to the various schemes charged in the S-1 Indictment, the defense will require more time to sort through, investigate, and prepare to address at trial the evidentiary issues raised by the government's proof, before counsel can finalize their defense to the charges based on the proof contained in the government's exhibits.[3]

Trial-related government disclosures should be made sufficiently in advance of trial to permit the defense enough time to make effective use of the material, ensure due process, and ensure the efficient administration of justice. Indeed, the overwhelming majority of district courts, in accord with Second Circuit authority, favor the view that "'it is within a district court's authority to direct the Government to identify [prior to trial] the documents it intends to rely on in its case in chief.'" *United States v. Vilar,* 530 F. Supp. 2d 616, 640 (S.D.N.Y. 2008) (requiring production of Exhibit List 60 days prior to trial), *citing United States v. Giffen,* 379 F.Supp.2d 337, 344 (S.D.N.Y. 2004) ("[B]ased on the policy concerns of Rule 16 and principles of fairness, it is within a district court's authority to direct the Government

---

[3] The defendants assume that the government remains willing to produce its Exhibits and Exhibit List 30 days before the trial; their Jencks Act materials two weeks before trial and any 404(b) evidence approximately four weeks before trial.

to identify the documents it intends to rely on in its case in chief"), *United States v. Upton,* 856 F.Supp. 727, 748 (E.D.N.Y 1994) (directing the Government to "provide a list of all documents to be referred to or relied upon by government witnesses"), *and United States v. Turkish,* 458 F.Supp. 874, 882 (S.D.N.Y. 1978) (directing the Government "to identify to the defendants those documents it intends to offer, or to use or to refer to in connection with the testimony of any witness, on its case in chief").

The disclosure of the government's exhibit list and exhibits 30 days before trial will simply be inadequate in this case, given the enormous number of documents that are likely to be marked as government exhibits and diversity of the government's proof, which includes brokerage and banking records, as well as extensive electronic surveillance of and communications among the defendants.[4]

Once they receive the government's exhibits and exhibit list, the defendants must sort, review and closely study the exhibits to determine which exhibits are relevant to the various schemes alleged in the S-1 Indictment and which can be used by the defendants for cross-examination. Many of the government exhibits relevant to defendant Cane will not be relevant to defendant Shapiro or defendant Morris, and *vice versa*, since each of these defendants is alleged to have participated in different schemes. Each of the defendants must then determine whether *in limine* motions are necessary, which is often the case, to address the admissibility of the evidence the

---

[4] While the government's investigation may continue until and even during the trial, and the government may discover evidence on the eve of or during trial, the parties can deal with the issue of late or last minute disclosures if and when the issue arises. The possibility of or opportunity for the government discovering relevant evidence at the eleventh hour is not an argument for permitting the government to unduly delay disclosure of relevant evidence it already possesses. The opposite is true. Precisely because the defendants may have to contend with damaging new evidence discovered by the government on the eve of or even during trial, the government should not be permitted to delay disclosure of the proof it already possesses.

6

government will offer against each defendant. At the same time, the defendants must prepare to object to some of the exhibits, look for other documents or testimony relevant to defending against the government's proof, and otherwise prepare for trial. Disclosure of the government's exhibits thirty days before trial is simply not adequate time for defendants to complete all of these required tasks.

The Defendants' request that the government produce a reasonably complete exhibit list and their marked exhibits no later than 60 days prior to trial, a deadline that will not be unduly burdensome for the government, particularly since the government has now had most of its proof in hand for more than two years while it investigated this case. The government should know by now most, if not all, of what it will offer at trial, and compelling it to organize and produce its documentary proof 60 days before trial (a date still months away at this point) will not impose an unfair burden on the government. In fact, compelling the government to produce its exhibit list and marked exhibits no later than 60 days prior to trial will actually be a blessing for all sides because the government will be compelled to organize its case well in advance of trial, resulting in its direct case going in smoother and quicker.

Moreover, no witness will be endangered nor evidence destroyed if the government is required to produce a reasonably complete exhibit list and marked exhibits no later than 60 days before trial. The defendants have all been free on bail since the beginning of this case, and have been allowed to travel regularly outside the jurisdiction, without any claim that any defendant tampered with a witness or attempted to destroy or alter evidence. Indeed, the government's proof will largely consist of historical records and recordings it obtained long ago. Requiring the

7

government to produce an exhibit list and marked exhibits sooner rather than later will not provide the defendants with an opportunity to tamper with the government's case.

The judges of this District and others have often required production of trial-related materials pursuant to schedules similar the one defendants propose in this motion, even in cases with less complicated allegations and less voluminous discovery than in this one. *See United States v. Vilar, supra,* 530 F. Supp. 2d at 640 (collecting cases in which District Courts ordered production of an Exhibit List prior to trial).

For an example of such an order in a recent case, the Court can look to *United States v. Bonventre*, 10 Cr. 228 (LTS).[5] *Bonventre* was a case involving a single, long-running Ponzi scheme in which the defendants played divergent roles and the possible proof produced by the government during the discovery phase was voluminous. In *Bonventre*, the Court required the government to "produce a list of exhibits and copies of the exhibits that it will use to prove the charges in this case no later than 60 days before the commencement of trial." Exhibit B, p. 15. While it is true that the scheme in *Bonventre* lasted longer than the schemes charged in this case, the S-1 Indictment demonstrates that this case is far more complicated than *Bonventre* since the government will be required to prove at trial at least four different schemes, unlike the one scheme in *Bonventre*. In addition, the proof in this case will differ substantially from scheme to scheme, unlike *Bonventre,* where the scheme remained

---

[5] For the Court's convenience, the orders in the two recent cases discussed in this motion are attached to this Memorandum of Law as Exhibits B and C.

the same throughout.  Finally, there was no electronic eavesdropping in *Bonventre,* as there was in this case.

Similarly, in *United States v. Wedd*, 15 Cr. 616 (KBF), a five-defendant case involving a single scheme and no wiretaps, the court directed that "witness and exhibit lists are due" approximately five weeks prior to the trial.  Exhibit C, p. 2.  Here, there are six defendants charged in four overlapping but diverse schemes, and the nature of the proof is far more complicated and diverse than the documentary evidence offered by the government in *Wedd.*

The orders and reasoning in *Vilar, Bonventre* and *Wedd* argue in favor of defendants' motion in this case, to compel the government to produce a reasonably complete exhibit list and marked exhibits 60 days prior to trial.  The proof in this case will be every bit as complex as in the cited cases, if not more so, and counsel will need 60 days, if not more, to digest the government's exhibits and prepare to meet, use and explain them.

## II.    THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE RULE 404(B) EVIDENCE NO LATER THAN 60 DAYS PRIOR TO TRIAL

Rule 404(b) of the Federal Rules of Evidence permits the government to introduce at trial evidence of the defendant's other bad or similar acts provided that, upon defense request, the government provides "reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial."   The Rule is intended to "'reduce surprise and promote early resolution' of any challenge to admissibility of the proffered evidence." *United States v. Nachamie*, 91 F. Supp. 2d, 565, 577 (S.D.N.Y. 2000) (quoting Advisory Committee Notes to Rule 404(b), 1991 Amendment).   Rule 404(b) does not define the term "reasonable notice," which is

9

left to the discretion of the Court. *Id.* In cases where early disclosure poses no threat to witnesses and the defense needs time to investigate and prepare a defense to the Rule 404(b) evidence, early notice is not only appropriate, but required. *Id.* District courts have found 60 days' notice before trial to be reasonable, depending on the factual circumstances. *United States v. Lino*, 00-cr-623 (WHP), 2001 WL 8356, *22 (S.D.N.Y. Dec. 20, 2000) (Pauley, J). *See also United States v. Psihos*, No. 08-cr-1026, 2009 WL 1033353, *1 (N.D. Ill. Apr. 14, 2009) (60 days reasonable in case involving four counts of tax evasion and four counts of false statements on a tax return); *United States v. Saleh*, No. 10 Cr. 623 (KTD), 2011 WL 1210107 at *8 (S.D.N.Y. 2008), *citing United States v. Vilar*, *supra,* 530 F. Supp. at 640-1.

As described above, this case is, undeniably, exceptionally complex. That complexity --- including the complexity and diversity of the charged schemes, the voluminous documents and data the government has produced relating to the allegations in the S-1 Indictment, and myriad other practical factors -- requires the government to disclose early information concerning any other "crime, wrong or other act" the government intends to prove at trial. In these circumstances, to facilitate fairness and case management, the Court should exercise its discretion to compel the government to produce any Rule 404(b) material no later than 60 days prior to trial.

Early notice by the government of "other acts" evidence is particularly warranted in this case because such evidence is likely to be as complex as the government's evidence in support of its case-in-chief. The defendants will need a significant amount of time to determine whether and how to preclude or defend

10

against any "other acts" evidence. Even if such proof is otherwise admissible, the defendants will need a significant period to investigate the government's proof and to develop a defense to it, as Rule 404(b) contemplates. Indeed, in the face of otherwise admissible Rule 404(b) evidence, the defense will need time to develop its inevitable argument that the other acts evidence should be excluded under Rule 403's balancing test.

Accordingly, the defendants contend that the Court should enter an order directing the government to produce any Rule 404(b) materials no later than 60 days before trial.

## III.     THE GOVERNMENT SHOULD BE REQUIRED TO DISCLOSE ALL *BRADY / GIGLIO MATERIAL* NO LATER THAN 60 DAYS PRIOR TO TRIAL

The law requires the government to turn over all *Brady* and *Giglio* materials early enough so that the defense has an opportunity to make effective use of the exculpatory and impeaching material at trial. *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001). The government commits a *Brady* violation if and when the disclosure comes too late for the defense to adequately investigate and use the disclosure. *See Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) ("the longer the prosecution withholds information, or (more particularly) the closer to trial the disclosure is made, the less opportunity there is for use"). Even the DOJ recognizes the wisdom and efficacy of early disclosure of such evidence. *See* "Guidance for Prosecutors Regarding Criminal Discovery," U.S. Dep't of Justice (Jan. 4, 2010) ("Providing broad and early discovery often promotes the truth-seeking mission of the Department and fosters a speedy resolution of many cases. . . Prosecutors are encouraged to provide broad and early discovery consistent with any countervailing

11

considerations."); *see also* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 454 (2009) (timely disclosure of *Brady* material requires the prosecutor to disclose evidence and information "as soon as reasonably practicable").

The government has yet to produce any *Brady* or *Giglio* material to the defense.  Perhaps the government will insist that it has not yet discovered any, although the defense knows that such a claim would be dubious.  For example, the defendants are aware that some of their original co-defendants have already pleaded guilty and agreed to testify for the government.   To properly cross-examine these cooperating witnesses at trial, and expose their inherent bias and motive to lie or shade the truth, defendants need and are entitled to the cooperating witnesses' plea and cooperation agreements, and all related material, e.g., drafts, notes, memoranda, and documented promises regarding leniency, bail agreements, and all statements given to the government or memorialized by the government.  Since the cooperating witnesses have pending prosecutions and sentencing proceedings in this jurisdiction, copies of any letters or other writings which might influence the nature of the charges, as well as sentencing considerations for each individual, should be disclosed. *See United States v. Badalamente*, 507 F.2d 12, 17-18 (2d Cir. 1974) (letters between government and cooperating witness are *Giglio* and *Jencks Act* material that the government should have disclosed).

The defendants should receive the *Brady* and *Giglio* material in sufficient time for the defendants to make effective use of the material.  In view of the volume of material which must be examined and digested by defense counsel in this case in order to prepare for trial, the defendants contend that the only way to ensure that

12

counsel have an adequate opportunity to make effective use of *Brady* and *Giglio* information is to order the complete of disclosure of all such material no less than 60 days prior to trial.[6]

### IV.  THE COURT SHOULD DIRECT THE GOVERNMENT TO DISCLOSE ITS JENCKS ACT MATERIAL NO LATER THAN 45 DAYS PRIOR TO TRIAL

The government has been investigating this case for the past three and a half years.  Its investigation has generated grand jury testimony, FBI reports of interviews, agents' notes, and statements of co-conspirators and cooperating witnesses whom the government intends to call as witnesses at trial.  The defendants cannot effectively use the massive amount of *Jencks* material in this case to cross-examine government witnesses without having adequate time to investigate, organize, and prepare, based on the materials produced by the government.  Production of this material well in advance of trial will lessen the potential for delay in the presentation and cross-examination of witnesses that would naturally result if the defense is required to review thousands of pages of testimony and documents at the last minute.  *See United States v. Narciso*, 446 F. Supp. 252, 270 (E.D. Mich. 1977) (requiring early disclosure of *Jenck's* material in "the interests of due process of law, effective assistance of counsel and the fair and efficient conduct of criminal trials. . .").

The government is likely to call numerous witnesses to testify to the four distinct and complex fraud schemes charged in the S-1 Indictment.  The testimony of that small army of witnesses will be complex and detailed, given the nature of the

---

[6] Wholly apart from a Court-imposed deadline for production of such important discovery material, the government is obliged to produce all *Brady* and *Giglio* material as expeditiously as possible.  *See* Guidance for Prosecutors Regarding Criminal Discovery, U.S. Dep't of Justice, Jan. 4, 2010 ("Exculpatory information, regardless of whether the information is memorialized, *must* be disclosed to the defendant reasonably promptly after discovery") (emphasis added).

allegations. A significant amount of time will be needed to review the *Jencks Act* materials relevant to those witnesses, and to prepare any necessary *in limine* motions and cross-examination.

In the present circumstances, production of all *Jencks Act* materials no later than 45 days before trial will give the defendants the minimum amount of time they need to be ready to proceed on the trial date set by the Court.  It is also the amount of time deemed necessary and ordered by other district court judges in comparably complex cases like *Bonventre* and *Wedd*.  *See* Exhibits A and B.  Any less time to review the *Jencks Act* materials in this case would impose an unfair and unnecessary burden on the defense.  See *Narciso*, 446 F. Supp. at 270-71 (complexity of the case and the number of witnesses expected required early disclosure of *Jencks* material to ensure fair and efficient trial).

Therefore, the Court should direct the government to produce the *Jencks Act* materials in this case no later than 45 days prior to trial, and if the government declines to do so, the Court should alert the government that it will give serious consideration to a defense request to adjourn the trial.

## V.    THE COURT SHOULD DIRECT THE GOVERNMENT TO PROVIDE IMMEDIATELY LIMITED BUT CRITICAL PARTICULARS

Rule 7(f) permits a defendant "to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [defendant] to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  In order to obtain a bill of particulars, the defendant must show that the charges of the indictment are so general

14

that they do not advise him of the specific acts of which he is accused. *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990). "Bills Of Particulars have grown from very small and technical beginnings into the most important instruments of justice." *Locker v. American Tobacco Co.*, 200 F. 973, 975 (S.D.N.Y. 1912). The decision to grant or deny a defendant's request for a bill of particulars is within the sound discretion of the trial court. *See United States v. Perez*, 940 F. Supp. 540, 550 (S.D.N.Y. 1996). Here, this Court has already warned the government that it would not tolerate a government attempt to avoid particulars by simply referring the defendants to the voluminous discovery. *See* Transcript of Proceedings (Nov. 29, 2015) at 27 ("it's in the documents' …. is not going to cut it").

In the present case, the government should be compelled to provide the defendants the limited particulars described below, so that they can adequately prepare for trial.

### A.    Identity of Unindicted Co-Conspirators

The government should be compelled to provide the defendants with the identities of all unindicted co-conspirators 60 days before the trial begins. The indictment charges a series of complex conspiracies in which the defendants are alleged to have acted with other persons to further the charged conspiracies. Many of the persons who acted in concert with the defendants have not been charged, but the government may assert at trial that their statements and conduct bind the defendants. The validity of defense objections to the government's proffer of such statements or conduct may turn on whether such persons are unindicted co-conspirators. If they are not, their statements would likely be inadmissible as statements in furtherance of the

15

charged conspiracy.  To sort this kind of complex evidentiary issue out, the defendants and their counsel must be informed of the identities of anyone who is an uncharged co-conspirator.

This Court has articulated a six-part test in determining whether to grant a bill of particulars revealing the identities of unindicted co-conspirators:

> (1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation.

*United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009), *aff'd sub nom. United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012) (citing *Nachamie*, 91 F. Supp. 2d at 572).

Here, all of the factors favor granting the requested particulars.  The indictment alleges a broad-ranging conspiracy involving numerous conspirators, including at least 10 that have been indicted to date, and multiple schemes to "pump and dump" the securities of at least four different public companies.  The government has provided no particulars to date despite the fact that it has dumped a virtual mountain of documents on the defendants.  There is no hint or suggestion in this case that there is any danger to the unindicted coconspirators from disclosure of their identifies, and, since the alleged conduct took place more than three years ago, there can be no harm to any government investigation which should have been concluded years ago.

16

### B.    Identification of Defendants' Particular Use of the Mails or Wires

Count One of the S-1 Indictment alleges a conspiracy to Commit Securities Fraud and alleges a series of overt acts against the defendants, including several mailings and wire communications.  Count Two of the S-1 Indictment alleges that the defendants engaged in a mail and wire conspiracy, but the indictment does not specify what mailings or wire communications the government will contend at trial furthered the alleged conspiracy.  In this case, there are thousands of mailings and wire communications that could, in theory, be the communications to which the government refers in Count One and Count Two.  The defendants cannot know which of their communications to prepare a defense against, unless the government is compelled to identify which uses of the mails or wires are the ones charged in Counts One and Two of the S-1 indictment.[7]  Therefore, the government should be compelled to provide the defendants with a Bill of Particulars specifying which communications the government will rely on to prove the allegations contained in Counts One and Two of the S-1 Indictment.

### C.    Alleged Misstatements

Similarly, Counts One, Three and Four of the S-1 Indictment charge the Defendants with conspiracy and substantive securities fraud offenses in violation of Rule 10b-5 of the Securities and Exchange Commission, charging that the Defendants made "one or more untrue statement[s] of material fact" in furtherance of their allegedly fraudulent schemes.  None of these counts specify what statements the

---

[7]  In this context, it is useful to compare Counts One and Two of the S-1 Indictment with Counts Five through Eleven, which identify the specific wire communications on which those counts are based.

17

government will contend are "untrue."  The indictment's introductory paragraphs
make reference to categories of documents that were allegedly fraudulent, i.e., "false
and misleading press releases" and "false and misleading SEC filings," but the
government to date has refused to identify which press releases or SEC filings were
false.  Moreover, given the substantial divide between the meager categories of
documents identified in the indictment and the vast number of documents produced in
discovery, defendants are left with the untenable task of having to review all of the
documents in the hope that they can discern which documents the government will
contend contained misstatements.  A bill of particulars is designed to reduce this form
of unfair surprise.  The Defendants cannot adequately prepare for trial without
knowing precisely what statements the government will contend were untrue when
they were made, as charged in Counts One, Three and Four, and the government
should be compelled to provide the Defendants particulars specifying the statements
on which it will rely.

**D.    The Legitimacy of the Underlying Companies**

In identifying each of the securities at issue in this case, the S-1 Indictment
refers to the companies' "purported business plan[s]."  Defendants have asked the
government to specify whether CodeSmart did not conduct its business in accordance
with the "business plan" and, if so, in what ways it deviated from the plan.  These
particulars are necessary to enable the defendants to determine whether 1) to move to
strike what is likely a baseless and prejudicial allegation; and 2) whether it will have to
engage in the time-consuming endeavor of marshaling evidence demonstrating that the

18

subject companies were legitimate companies with real business plans and potential (and which, but for the indictment, would have been successful).

>        E.      Venue

Defendants have requested that the government identify the basis for venue as to each count of the indictment.  While the S-1 indictment contains the boiler-plate allegation that the crimes were committed "within the Eastern District of New York and elsewhere" (*see, e.g.,* S-1 Indictment ¶52), there is nothing in the indictment to indicate the basis for concluding that the charged offenses were committed in the Eastern District of New York.  On the contrary, of the multiple defendants only two (Ofsink and Morris) are alleged to have been residents in the Eastern District of New York, and even as to those two defendants their principal places of business were in the Southern District of New York. The companies whose securities were allegedly manipulated were not located in the Eastern District of New York, but in either New York County or Nevada.  Discala's companies that allegedly facilitated the fraud were also located outside the Eastern District of New York.  As a result, it is likely that most, if not all, of the charged conduct was committed outside of this district.  Under these circumstances, courts have recognized that the government should be compelled to provide a bill of particulars indicating the basis for venue in the district. *United States v. Castellano*, 610 F. Supp. 1359, 1389-90 (S.D.N.Y. 1985) (notwithstanding the fact that the government articulated a venue theory in its motion papers that could be "sufficient in principle . . . but a basis for venue must be alleged in a bill of particulars for each of the counts at issue").

Here, particulars are especially important. To the extent that the government intends to rely on individual victims to justify its venue theory, the defendants are entitled to have the government identify those victims now so that they can prepare a defense as to them. Indeed, because the unit of prosecution for securities fraud is the particular transaction, it is likely that the government lacks venue for the bulk of the charges. Under these circumstances, defendants are entitled to have the government identify the venue of the various transactions alleged in the S-1 Indictment now, so defendants can determine whether a motion to dismiss is appropriate.

## CONCLUSION

For all the foregoing reasons, the moving defendants respectfully submit that their motions should be granted in full.

Dated: New York, New York
June 5, 2017

Respectfully submitted,
SERCARZ & RIOPELLE, LLP


By:    *Roland G. Riopelle*

Roland G. Riopelle, Esq.
Robert Caliendo, Esq.
810 Seventh Avenue, Suite 620
New York, NY 10019

*Attorneys for Defendant*
*Kyleen Cane*

20