1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2
        - - - - - - - - - - - - - - X
 3    UNITED STATES OF AMERICA,    :
                                   : 14-CR-00399
 4                                 : (ENV)
                                   :
 5          -against-             :
                                   :
 6                                 : United States Courthouse
                                   : Brooklyn, New York
 7    ABRAXAS DISCALA, IRA         :
      SHAPIRO, CRAIG               :
 8    JOSEPHBERG, KYLEEN CANE,     :
      DARREN GOODRICH,             : Friday, November 20, 2015
 9    DARREN OFSINK,               : 11:00 a.m.
      MICHAEL MORRIS,              :
10                                 :
              DEFENDANTS.          :
11      - - - - - - - - - - - - - - X

12          TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
              BEFORE THE HONORABLE ERIC N. VITALIANO
13              UNITED STATES DISTRICT COURT JUDGE

14                     A P P E A R A N C E S:

15    For the Government:    ROBERT L. CAPERS, ESQ.
                             United States Attorney
16                           BY: SHANNON JONES, ESQ.
                                 WINSTON PAES, ESQ.
17                               PATRICK HEIN, ESQ.
                             Assistant United States Attorneys
18
      For the Defendant      BY: ROLAND RIOPELLE, ESQ.
19    ABRAXAS DISCALA:

20    For the Defendant      BY: RICHARD GREENBERG, ESQ.
      IRA SHAPIRO:               STEVEN YUROWITZ, ESQ.
21
      For the Defendant      BY: ELLEN MURPHY, ESQ.
22    CRAIG JOSEPHBERG:

23    For the Defendant      BY: ROLAND RIOPELLE, ESQ.
      KYLEEN CANE:
24
      For the Defendant      BY: PATRICK SMITH, ESQ.
25    DARREN GOODRICH:
```

2

1    For the Defendant      BY: **CHRISTOPHER BRUNO, ESQ.**
     DARREN OFSINK:

2

     For the Defendant      BY: **MARANDA E. FRITZ, ESQ.**
3    MICHAEL MORRIS:            **ELI RICHLIN, ESQ.**

4

5            Court Reporter:  **Angela Grant**, RPR, CRR
                     Official Court Reporter

6

7

8    Proceedings recorded by computerized stenography. Transcript
     produced by Computer-aided Transcription.

9                         * * * * * * * *

10

11

12            (In open court.)

13            (Time Noted: 11:15 a.m.)

14            (Defendants present in open court.)

15            (Defendant Kyleen Cane present via telephone.)

16            COURTROOM DEPUTY:  All rise.  Court is now open.

17   The Honorable Eric N. Vitaliano presiding.  Case on the

18   calendar is USA versus Discala and others.  Case number

19   14-CR-399 on for an arraignment and status conference.

20            Will counsel for the government please note their

21   appearance.

22            MS. JONES:  Shannon Jones, Winston Paes and Patrick

23   Hein for the United States.

24            Good morning, Your Honor.

25            THE COURT:  Good morning.

*PROCEEDINGS*                                                    3

1      COURTROOM DEPUTY:  Will counsel for Discala please
2  note their appearance.
3      MR. RIOPELLE:  Yes, Your Honor, Roland Riopelle
4  standing in for Chuck Ross this morning on behalf of
5  defendant Abraxas Discala.  And I'm also here appearing, of
6  course, on behalf of my client, Kyleen Cane.
7      Good morning, Your Honor.
8      THE COURT:  Good morning.
9      And Ms. Cane is on the phone I believe.
10     MR. RIOPELLE:  That was my hope.  Thank you, Judge.
11     COURTROOM DEPUTY:  Ms. Cane, are you there?
12     DEFENDANT CANE:  I am here.
13     COURTROOM DEPUTY:  All right.  Thank you.
14     For Shapiro.
15     MR. GREENBERG:  Richard A. Greenberg and Steven
16  Yurowitz, Y-u-r-o-w-i-t-z, for defendant Ira Shapiro who's
17  sitting in the audience, Your Honor.
18     THE COURT:  Good morning.
19     COURTROOM DEPUTY:  For Josephberg.
20     MS. MURPHY:  Ellen Murphy from Morvillo LLP for
21  Craig Josephberg who is also sitting in the courtroom.
22     THE COURT:  Good morning.
23     MS. MURPHY:  Good morning.
24     COURTROOM DEPUTY:  For Goodrich.
25     MR. SMITH:  Patrick Smith for Darren Goodrich who is

*PROCEEDINGS*                                                4

1   present in the court.

2          Good morning, Your Honor.

3          THE COURT:  Good morning.

4          COURTROOM DEPUTY:  And for Morris.

5          MS. FRITZ:  And last, and very much least, Maranda

6   Fritz and Eli Richlin from Thompson Hine for Mr. Morris.

7          Good morning.

8          THE COURT:  Always the wish of defense counsel to be

9   hidden in the woods.

10          COURTROOM DEPUTY:  I'm sorry.  One more defendant.

11   For Ofsink.

12          MR. BRUNO:  Christopher Bruno on behalf of Darren

13   Ofsink who's present, Your Honor.

14          Good morning.

15          THE COURT:  Good morning.

16          COURTROOM DEPUTY:  Counsel for both sides are

17   present including defendants.

18          THE COURT:  Ms. Jones, are you speaking today?

19          MS. JONES:  Yes, I am.

20          THE COURT:  Why don't you try to catch us up.  I

21   know a lot has happened and there's a lot to do this morning.

22          MS. JONES:  That's right, Your Honor.

23          THE COURT:  Various defendants are here in various

24   capacities.

25          MS. JONES:  We have a new superseding indictment

1  which includes all the defendants who are here today.  We have

2  three newly-added defendants, Darren Goodrich, Darren Ofsink

3  and Mr. Morris.

4        THE COURT:  And two of them have been arraigned on

5  the new indictment.

6        MS. JONES:  That's right.

7        Mr. Goodrich was arrested in California and today is

8  his first appearance here so he needs to be arraigned on the

9  new indictment as well as the four defendants who were on the

10 original indictment.  They also need to be arraigned on the

11 superseding indictment.

12       We have a -- our next status conference was already

13 scheduled for mid-March 2016, so assuming that that still, you

14 know, works for everybody, we'll keep with that.  And then I

15 guess the main thing what we're working on between now and

16 then is getting everybody up to speed on discovery.

17       I gave counsel for the three new defendants copies

18 of all the prior discovery cover letters that describe what

19 discovery has been produced and includes print orders of what

20 items can be ordered from First Choice, if they want to do

21 that.  We have several disks that we've produced directly from

22 the U.S. Attorney's Office, and we'll get those out hopefully

23 by the end of the week to each defendant as well as any

24 particularized discovery relating to maybe statements or

25 criminal history for each of the new three defendants.

*PROCEEDINGS*                                                    6

1          THE COURT:  All right.  Lets -- so we don't lose

2    track of these things -- what the -- with the exception of the

3    two defendants who have already been arraigned, we have all of

4    the prior defendants and Mr. Goodrich.

5          Does everyone waive a reading of the new indictment?

6          MR. RIOPELLE:  Yes, Your Honor.  We discussed that

7    before Your Honor took the bench.

8          MR. GREENBERG:  That's correct, Your Honor.  Richard

9    Greenberg for the Defendant Shapiro, he too waives the

10   reading.

11         THE COURT:  All defendants waive the reading, and

12   the Court enters a plea of not guilty with respect to all

13   defendants on all charges.

14         Now, with respect to Defendant Goodrich there is a

15   joint application I hear is forthcoming with respect to bail.

16         MS. JONES:  That is correct, Your Honor.  Bail

17   conditions were set in the -- in the Federal District of

18   California where he was initially arrested.  His bond is

19   secured by a $1 million bond.  He has two suretors who are

20   liable for portions of that bond and that bond is secured by a

21   property.  That is satisfactory to the government and

22   pretrial, my understanding, is for going forward.  And I

23   assume that it's -- it's -- that defendant wants to continue

24   those bail conditions.

25         MR. SMITH:  That's correct, Your Honor.  With the

1    only exception being we'd like the condition of travel

2    extended to the district of New Jersey, largely to facilitate

3    travel back and forth to California.

4         THE COURT:  I have no problem with that.  So with

5    that modification, the bond conditions are accepted and now

6    are ordered.

7         Now, with respect to the balance of what Ms. Jones

8    reported, discovery is going forward and we're looking,

9    including catching up three new defendants, enlightening all

10   defendants as to discovery with respect to the -- whatever

11   changes the superseding indictment work on the original

12   charges and that we are moving towards a March 16th status

13   conference.

14        MS. JONES:  March 16, yes.

15        MR. GREENBERG:  Yes, Your Honor.

16        MS. JONES:  I'm sorry, March 18th.

17        THE COURT:  Okay.  Everybody's on the same page now,

18   March 18th, okay.

19        MS. FRITZ:  Unfortunately, Your Honor, at the risk

20   of being a fly in the ointment, I'm actually not on the same

21   page.  I represent Michael Morris.  I find myself now being

22   added into a case that's a year and a half old.  I'm certain

23   that Your Honor is interested in moving that case forward.

24        I've taken a look at the indictment.  I've taken a

25   look at the materials that reflect that more than a year ago

1   an enormous quantity of discovery was provided to other

2   individuals.  But I've also taken a look at the fact that my

3   client is truly an afterthought in every way.

4          And so rather than simply plowing ahead, what I

5   wanted to talk to Your Honor about is the fact that I would

6   like, sooner rather than later, to start raising those issues

7   with the court.  Motions for severance, it looks to me like

8   there's an issue even with respect to joiner.

9          It looks to me like there's also an issue relating

10  to the fact that the SEC proceeded even while Your Honor had

11  stayed that case, and that seems to have led to the indictment

12  of my client in this case.  So I think those are -- those are

13  issues that are best raised at this point for a very practical

14  reason.  My client is indicted in this case because he was the

15  principal of a brokerage firm that was involved for literally

16  two or three months and had employed there a broker who was

17  allegedly involved with Mr. Discala.  My client then

18  terminated that broker.  The other individuals went on about

19  their business, and there are three other stocks and there are

20  I think ten other counts and a full year and a half of conduct

21  that then occurs.

22         And so if I just plow ahead I'm confronted, not only

23  with trying to catch up in the case, but also with having to

24  learn all about a year and a half worth of conduct that I

25  would honestly rather not learn about.  I'm sure the

1   government would argue there's a conspiracy count in there and

2   so what happened two years later is admissible against your

3   client.  Well, I would like to go ahead and have those issues

4   addressed now.

5            My client isn't particularly well-resourced.  If I

6   have to go and learn two years' worth of conduct and review

7   what I hear is a hundred hours of tapes that happened a year

8   later and have nothing to do with my client, this case becomes

9   certainly difficult to deal with and defend.  So I think the

10  circumstances are unusual enough here that at this point I'd

11  like to go ahead and address those issues.  So what I'm asking

12  is for a motion schedule to start presenting those issues to

13  Your Honor now.

14           THE COURT:  Mr. Greenberg, do you wish to be heard?

15           MR. GREENBERG:  Yes, Your Honor.  I would like the

16  government or the Court to believe that at the very beginning

17  of the case if there's any conflict among counsel, because

18  Ms. Fritz is an excellent attorney with a great reputation

19  and --

20           MS. FRITZ:  No conflict here.

21           MR. GREENBERG:  We will be working with her as best

22  we can, but we've gone down this path before about motion

23  practice.  And the next status conference in March is one

24  where we hope -- I'm getting to have my doubts -- but where we

25  hope we would all be in a position to set an intelligent,

*PROCEEDINGS*                                                    10

1   appropriate schedule for motions and there are substantial

2   motions.  And some of what Ms. Fritz has said applies as well

3   to Mr. Shapiro, particularly at the severance motion, very

4   important severance motion.  Much of the same reasons that

5   she's indicated for her client.

6           So I believe that we should continue with the

7   schedule that we contemplated, and we'll try to use the time

8   constructively to help Ms. Fritz get up to speed.  And I know

9   that might not satisfy her, but there's a lot of other

10  defendants and lawyers here.  And, as I said, she's sort of

11  the new kid on the block and she'll do fine but.

12          THE COURT:  I'm sure she will.  I don't think anyone

13  has any concerns about her not doing fine.

14          MR. GREENBERG:  Right.

15          THE COURT:  The question is what it is she'll be

16  doing fine at.

17          MS. FRITZ:  Exactly.  And I'm not sure there's any

18  reason to delay these issues.

19          THE COURT:  Now, so everyone understands what I

20  understand what I'm considering, I'm understanding Ms. Fritz

21  to be requesting an opportunity to accelerate for her client

22  only a severance motion.

23          MS. FRITZ:  Correct.

24          MR. BRUNO:  Your Honor, on behalf of Darren Ofsink,

25  we are contemplating a similar strategy and I would join in

PROCEEDINGS                                              11

1   Ms. Fritz's request.

2              THE COURT:  Now, Ms. Jones, do you wish to be heard?

3              MS. JONES:  I think Mr. Paes is itching to be heard.

4              MR. PAES:  Your Honor, if I may.  I think, you know,

5   with respect to any kind of a severance motion, I think there

6   are similarly situated defendants in this case because the

7   main theory of the government's case is there are two schemes

8   alleged in terms of substantive counts, the CodeSmart scheme

9   and the Cubed scheme.  And there are some defendants -- and I

10  believe with respect to the -- with the exception of

11  Mr. Discala and Mr. Josephberg who are the current defendants

12  in the case, all the others in terms of the substantive counts

13  have been charged with either one or the other.

14              So to the extent of the parties want to make

15  severance motions, I think to allow, you know, some of those

16  defendants to make them and not the others, and not saying

17  that they all want to make them, but to the extent that they

18  want to make them, I think should all be given an opportunity

19  to make them at the same time, just for purposes -- I mean,

20  it's the only way the Court can properly consider all of the

21  parties' interests by doing it in that manner.

22              Having said that, the other concern the government

23  has is I think what Mr. Greenberg also touched on.  It seems

24  difficult to comprehend how intelligent and proper motions can

25  be made without having a chance to look at at least some of

1    the relevant discovery that pertains to the individual

2    clients.

3            Now, if, you know, Ms. Fritz says that, you know,

4    there are all of these tapes that none of them concern her

5    client, she doesn't have to listen to those tapes right now to

6    make those motions if they don't concern her client.  But

7    there are clearly relevant documents and discovery that do

8    concern her clients, and I think it would be prudent I think

9    for, for the parties to look at some of the discovery before

10   being able to make an informed motion as opposed to saying,

11   well, we already made the first motion to sever, but now we've

12   had additional discovery presented to us because the first one

13   may have been denied, for example.  I'm not presuming it.  But

14   if it were to be denied, now we have additional discovery,

15   we'd like to make a second and a third motion for severance

16   based on rolling discovery productions, and I don't think that

17   is an efficient use of the Court's, you know, time as well as

18   the time of all of the parties involved.

19           MS. FRITZ:  If I could respond to that.  First of

20   all, I would just like to tell the Court that I do have

21   knowledge with respect to the case.  I didn't walk into this

22   yesterday and Mr. Paes knows that.  So I do have a working

23   knowledge with respect to what this case is about, and,

24   obviously, a working knowledge of what the allegations are as

25   relates to my client.

1           The other issue that I would point out is I don't

2    understand why I'm standing here 15 months later, but the

3    government made a decision to bring in someone 15 months after

4    the commencement of a trial who had a very, very limited

5    involvement.  And so I think -- and I know Mr. Paes

6    understands this.  I am justifiably concerned that I'm now

7    going to get caught up in the Court's interest in getting this

8    thing moving.  Your Honor has to be concerned about that.

9           And so my view is, yes, Mr. Paes would like this to

10   go forward and slowly but surely I'll just simply be kind of

11   sucked into the process.  You know, Your Honor, that's what

12   I'm trying to avoid.

13          THE COURT:  Well, as I understand the -- where we're

14   at, and correct me if I'm wrong, is that by the time we're

15   scheduled to gather again in March, the government will have

16   long completed all of its discovery production, is that right?

17          MR. PAES:  Well --

18          MS. JONES:  Your Honor --

19          MR. YUROWITZ:  Actually, if I may, Your Honor, I

20   don't think that's correct because the terabyte that you heard

21   about I think maybe six months ago Your Honor heard about it,

22   maybe nine months ago, we still haven't gotten anything from

23   that.

24          MS. JONES:  Your Honor, let me -- let me clarify.

25   The one big outstanding bulk of documents relates to

1  electronic evidence that was seized from Discala's business,

2  OmniView.  As part of the search warrant that was executed at

3  that business, the government seized nine images, either

4  computers or servers.  And we initially believed that we had

5  one terabyte of data that we needed to deal with and it turned

6  out to be three and a half terabytes of data and there have

7  been technical issues related to that.

8         To be clear, those images were seized from Discala's

9  business, and once those were copied, we provided a copy of

10  the original, you know, what we originally imaged, we provided

11  that copy to Discala's counsel.  We then sent the data to an

12  outside vendor to -- using search terms that the defendants

13  had agreed upon -- to separate out potentially relevant

14  material and not relevant material.  We've done that part.

15  We've taken back the potentially relevant pile of documents,

16  which is about 1.6 million documents, based on these search

17  terms, some of which were kind of expansive.  So my

18  expectation is that what's really relevant is going to be much

19  smaller than that.  But right now those 1.6 million documents

20  which Discala's counsel has, we've produced to him a complete

21  copy of what was determined to be potentially relevant and

22  responsive.

23         But now what the next step that we need to do is we

24  need to -- we're uploading it into a searchable database which

25  is, unfortunately, due to the size of the data is taking much

1    longer than we thought, but we expect that will be --

2           THE COURT:  What have you produced to the clients

3    other than Discala?

4           MS. JONES:  Only Discala because the next step once

5    we get it loaded into a searchable format is that we need to

6    separate out what might be potentially privileged.  And we

7    have a list of terms that we've agreed on with Discala's

8    counsel.  So what -- these are what we're going to separate

9    out as soon as we get to the point where we have a searchable

10   database to segregate material, and then what's left we're

11   going to produce to the remaining defendants and we'll give

12   Discala's counsel both what we've designated as potentially

13   privileged and the remainder.  So but Discala's --

14          THE COURT:  So, essentially, Ms. Fritz has nothing

15   to look at at this point.

16          MS. JONES:  That is correct.

17          Although these are OmniView's --

18          MR. RIOPELLE:  Nothing from Mr. Discala's computer,

19   but she has plenty to look at from us.

20          MS. FRITZ:  I just am receiving today apparently

21   roughly a half a million documents and a hundred hours of

22   tape.  So I could definitely go into panic mode to try to

23   learn the case quickly and I'm trying to avoid that.

24          MR. PAES:  Your Honor, may I address this one issue

25   as well.  This idea or concept that it's somehow odd that a

*PROCEEDINGS*                                                   16

1   defendants have been added to a case 15 months after the

2   initial indictment.  I'm sure, you know, Your Honor sees that

3   happen all the time.  The fact is that Mr. Morris is not the

4   only defendant whose been added.  Obviously, Mr. Ofsink and

5   Mr. Goodrich have also been added.

6           And, in fact, you know, the stay was mentioned.

7   Part of the reason the government sought a stay in the SEC

8   case was because it was very clearly stated it was an ongoing

9   criminal investigation at that point in time.  So I don't see

10  what the issue here is regarding the mentioning of the fact

11  that it's been delayed for 15 months.  Obviously, as you are

12  evaluating and developing evidence, the government routinely

13  brings charges against additional individuals and it sometimes

14  brings additional counts against individuals who are in the

15  indictment.  So I don't see that there's -- what the point of

16  those remarks were with respect to any motion she'd like to

17  make.

18          MS. FRITZ:  I understand.  Obviously my response

19  would be, I am a year behind.  It's easy for Mr. Paes to say,

20  you know, gosh, this shouldn't be a problem.  I'm a full year

21  behind.  And by virtue of this case being handled this way,

22  with my client coming in now, with this charge of -- he's

23  not -- he's not charged on simply what I think -- what I think

24  would be the issue, which is the CodeSmart trading that

25  occurred at his firm.  This is a charge that would include him

1    in an overarching conspiracy.  And so I think it does put me

2    in a complex case like this, a year into it, in a tough

3    position because, in part because I think it puts Your Honor

4    in a tough position.

5            Your Honor I have every reason to believe intended

6    to move this thing forward in March.  Well, I need a year to

7    catch up, theoretically.  So that's -- that's all I'm saying.

8            MR. PAES:  So I don't see how filing motions now

9    speeding it up even further helps Ms. Fritz in that regard.

10           THE COURT:  That was my reaction as well, Mr. Paes.

11           We're certainly not going to piecemeal motions from

12   the same defendant over the course of -- over the course of

13   time.  And to the extent the -- I've been enlightened as to

14   where we stand on discovery and, you know, every counsel has

15   his or her right to approach a case from their own perspective

16   and look at whatever they -- in terms of discovery, whatever

17   they'd want to look at and disregard whatever they'd want to

18   look at.  But it seems to me that the discovery ought to be

19   more fulsome whether counsel wishes to look at it or not

20   before we actually address the motion.

21           MR. GREENBERG:  If Your Honor, if I may just add a

22   thought here.  And normally, I mean, we concluded I wouldn't

23   say anything about this, but you do wear two hats.  And the

24   other hat that you wear, presiding over the SEC enforcement

25   action, is the one that is going to come up most quickly where

1    an issue directly effecting this superseding indictment is

2    going to be before your court, before Your Honor.  And that's

3    the question of the SEC circumventing the stay that's been in

4    effect under the guise of the continuing investigation which

5    is what Mr. Paes has said the government is doing.

6              Well, the SEC doesn't have the same powers as the

7    government.  We believe the SEC has continued to conduct

8    discovery circumventing the stay, and it's handed off to the

9    government and that's what has produced this superseding

10   indictment.  So in a very real way we believe, and we are

11   going to be arguing this in the SEC matter very shortly, we --

12   when they ask for permission to amend, as they have, to amend

13   the superseding -- to amend their complaint, file a new

14   complaint, we're going to be taking a position that the

15   superseding indictment is tainted by the conduct of the SEC.

16   And to the extent they work closely, as I believe they have,

17   as I believe the government would acknowledge with the

18   government, hand in glove, turning over to them with new

19   material they've found in what we call discovery, they call,

20   without any permission to do so, a circumvention of the stay

21   by calling it a continuing investigation.

22             Even if the government has that power, as Mr. Paes

23   says and exercises it regularly in many cases as Your Honor

24   has seen, the SEC does not have the same power.  They don't

25   have a grand jury.

1           There was a stay and an easy solution for them, if

2    they thought there was real investigation to conduct, that was

3    to go before Your Honor and ask permission, on notice, I hope.

4    I don't know what reason there would be in an SEC enforcement

5    action to seek an ex parte application.  But if they had that

6    grounds, they would make that application to Your Honor.  But

7    they didn't seek any permission, and we believe that violates

8    the SEC's rule.

9           I burden you with all this now when I didn't intend

10   to only because there is something that's coming up and

11   because you sit on both cases, it effects the superseding

12   indictment.  That is something that you are going to have to

13   consider just in the SEC matter, the effect of our complaint

14   in the SEC matter will have on the new indictment.  So I

15   wanted to give you a sort of heads-up, to put it colloquially,

16   that that is coming up.  It seems piecemeal.  We could make

17   that motion again, unless Your Honor resolves it

18   categorically, when we make the motions in this case in the

19   criminal case when we make motions to dismiss where we would

20   make the same argument, but we're going to be able to do it

21   much, much quicker.

22          Now, I don't know what that's going to do, but I did

23   want you to be aware that this issue is coming up very soon

24   because of the two hats you wear in this matter.

25          MR. YUROWITZ:  Your Honor, just one more thing, if I

1   may add, because Your Honor, obviously, asked the question

2   whether in March are we going to be done.  One thing I think

3   that can be done to help all the defendants, more than a year

4   ago we served on behalf of Mr. Shapiro a request for

5   particulars, a detailed letter.  We got back one paragraph

6   from the government saying it's all in the discovery.  Well,

7   now we're here a year later, we still don't even have the

8   discovery.  We don't even know if we're going to have the

9   discovery in March, but I think certainly if the government

10  would give us the particulars, it would -- and focus on us

11  what it relates to our client when the government -- even the

12  government concedes that there are different schemes here that

13  each of the defendants are not involved in.  I think that

14  would certainly help the process and that can be done now.

15              MR. PAES:  Your Honor, if I may address this.  First

16  it's wrong to say they have no discovery for over a year

17  because as has been already discussed, they have kind of a

18  half a million documents of discovery and all of the tapes.

19              But putting that aside, with respect to say what the

20  particulars are, it is a lengthy, you know, speaking

21  indictment in which specific -- the scheme has been described

22  at great length.  And, you know, the Court probably knows way

23  better than I do in terms of the law surrounding a request

24  for a Bill of Particulars.

25              Additionally, a Bill of Particulars motion is not

PROCEEDINGS                                                21

1    appropriate until discovery has been completed because they go

2    hand and hand.  So I think, again, this goes down to the -- to

3    the extent that counsel still believes there is a need for a

4    Bill of Particulars motion that they want to make, obviously,

5    they're entitled to make it as part of their motion practice.

6    But, again, it would be more prudent to be making it at a time

7    when they've had a chance to review the discovery and then

8    feel, well, I still don't understand what the case is about

9    and I need some particularization as to certain aspects

10   involving my client.  If that is the case, then, you know, and

11   they make a Bill of Particulars, I'm sure the Court will grant

12   if, based on the law, it requires one.  But I, again, I think

13   it's premature to file a Bill of Particulars motion at that

14   time.  Particularly in light of what is clearly established

15   case law and what is the fact that you have a lengthy speaking

16   indictment that does address the role that each individuals

17   played in this scheme.

18            THE COURT:  As I understand it from what Ms. Jones

19   said earlier, the government is endeavoring to particularize

20   the document production to each defendant, is that correct?

21            MS. JONES:  No, Your Honor.  I -- to be, to be

22   clear, what I was talking about was there are certain items

23   that only a particular defendant would be entitled to, like

24   his criminal history and his -- whatever post arrest

25   statements he may have made.  So we're going to make

1  particularized productions to each of those defendants.

2           THE COURT:  But do that and give -- with respect to

3  the documents from Mr. Discala's files.

4           MS. JONES:  From Mr. Discala's files -- I mean, to

5  date, the government hasn't been able to do any sort of review

6  of those documents because we're still -- haven't even

7  separated out what's potentially privileged.

8           THE COURT:  A privilege log is not done yet?

9           MR. PAES:  Yeah.  But the search terms, they haven't

10  been separated yet.  So what we have been doing is -- the

11  only -- obviously, the only person who has the discovery is

12  Mr. Discala because it's -- would be his potential privilege

13  to waive or assert.  And so I think we are -- we have kind of

14  separated -- in the process of being separated, but -- we've

15  separated them, but now they're being uploaded.  And as soon

16  as they get uploaded, we will then turn, you know, turn them

17  over, that part of it.

18           MS. JONES:  That we can separate out as being not --

19  that doesn't have any privilege issues attached to it that we

20  know of.

21           MR. PAES:  And I think the privilege issues might

22  have been further, you know, I mean, we have to engage -- and

23  Mr. Ross is not here so I don't want to say anything while

24  he's not here.  But we have to obviously engage Mr. Ross to

25  see if any of those potentially privileged terms are effected

*PROCEEDINGS*                                               23

1    by developments that have happened in the case.

2              The other thing I'd like to add is because --

3              MR. RIOPELLE:  And I do know Mr. Ross has, you know,

4    I consulted with him before the conference today.  I do --

5    this is Roland Riopelle speaking, by the way.  I do know that

6    he has circulated a proposed stipulation with respect to

7    inadvertent waiver of the privilege and that kind of thing

8    because given the huge volume of the materials there's the

9    possibility of that.

10             MR. PAES:  Right.

11             MR. RIOPELLE:  So I know the process is moving

12   along.

13             MR. PAES:  Yeah, and Mr. Ross has actually been, you

14   know, very involved with us in trying to expedite the process

15   in light of the fact I think he appreciates the privilege

16   issue is kind of holding a lot of -- some of this back and

17   makes it complicated.  And he wants to protect his client's

18   interest as well, but I think there is some -- he did mention

19   to us that he had circulated kind of a stipulation to the

20   parties.

21             With respect to the -- I just want to address the

22   one thing about the SEC case.  Obviously, this is not the SEC

23   case that's before Your Honor right now, and they're not over

24   here.  And so I think, you know, that's probably -- the issues

25   involving the SEC, at least initially, I saw that -- because

1   we have intervened in that matter, we were informed that the

2   Court has set a briefing schedule to address those issues.

3   And I guess at that point the Court can decide what's

4   appropriate, what's not, what they did, whether it was

5   appropriate or not.  And who, on which parties even have

6   standing to oppose that.  For example, I believe Mr. Greenberg

7   was -- who represents Mr. Shapiro was -- had an issue with

8   that but Mr. Greenberg is, you know, Mr. Shapiro is already

9   charged.

10          I guess, I guess I see Ms. Fritz's point because

11   she's a new party involved.  But, again, I don't know what the

12   rules are as to whether, you know, you are to stop any kind of

13   inquiry or investigation into the parties that already have

14   been charged as opposed to new people.  I just think, and,

15   again, logically speaking, if you were to hand tie the arms of

16   the SEC by saying, well, because you have some individuals

17   charged and no one else can be charged just doesn't seem to

18   make sense, but I think that's a matter point being -- that's

19   not an issue I think over here to be discussed when the SEC is

20   not present here as a party to kind of counter those

21   allegations being made against them.

22          I think that is properly addressed in a separate

23   forum, and what flows out from that, I agree, they might have

24   motions to make in the criminal case based on whatever comes

25   out of the SEC case.  I just think it's premature to be

1    addressed over here without the other party being present.

2          MR. GREENBERG:  I thought -- Richard Greenberg on

3    behalf of Ira Shapiro.

4          I just wanted to give Your Honor an advance, advance

5    notice about an issue that's coming up very shortly before you

6    that effects the very proceeding we believe that's before you

7    today.  And, of course, I'm not wanting to take advantage of

8    the SEC's absence here, just to give you some notice.

9          But second of all, when it comes to the law of bill

10   of particulars, the one principle I think we all know to exist

11   is the government cannot dump on us, to put it colloquially,

12   millions of data points or documents and expect us to find the

13   evidence relevant to our -- and my client's similarly situated

14   to Ms. Fritz's, you know, one transaction, one scheme, expect

15   to find the relevant documents and the relevant charge.  And

16   they can't say at that point, and I'm sure Your Honor is aware

17   of this law, of the Circuit's law and your own practices.

18         They can't say that, oh, it's all in the discovery.

19   You find it.  That's not permissible when they are going to

20   give us at such a late date such an immense amount of

21   discovery.

22         So I do hope Your Honor will feel free to give the

23   government some guidance about how forthcoming they should be,

24   and I think you alluded to this already.  They should be quite

25   forthcoming when it comes to providing us either

PROCEEDINGS                                          26

1   particularized discovery, as you describe it, perfectly good

2   idea or Bill of Particulars or something.  I don't say you

3   should rule on it now, but I think the government would take

4   heed to any guidance or thoughts the Court might express.

5           THE COURT:  You're right.  I did give a hint that

6   having search terms that are relevant to -- in a particular

7   way to each of the defendants in this three Empire State

8   Building's worth of documentation is probably advice you

9   should heed.

10          MR. PAES:  Just to be clear, Your Honor.  We -- the

11  discovery that has been produced, has been produced with an

12  index so it tells you what kind of, you know, categories of

13  documents and what Bates numbers are within that.

14          Additionally, I mean, in this, you know, modern age

15  of discovery, the discovery is searchable.  So if

16  Mr. Shapiro's lawyer wanted to run a search for Shapiro, for

17  example, he'd have to run a search for Shapiro and he gets

18  that from the overall data that is being produced in, I

19  believe, and still being produced as concordance load files.

20  So I don't think it's appropriate to say that or proper to say

21  or correct to say that the government has just dumped data on

22  them when the discovery is actually been produced in a very

23  organized fashion.

24          THE COURT:  To cut to the quick.  Here's the short

25  answer.  If and when a motion for a Bill of Particulars is

PROCEEDINGS                                                    27

1    advanced by any of the defendants, the answer that it's in the

2    documents as a one paragraph naked response is not going to

3    cut it.

4            MR. PAES:  Understood, Your Honor.  And we

5    understand that.

6            THE COURT:  All right.  A preview of the -- and I

7    want to make sure we're all on the same page here.  With

8    respect to the SEC matters not before me this morning, to the

9    extent that there's motion practice coming there, the idea

10   that something that happened either in that proceeding or

11   conduct of the SEC is somehow tainted the indictment, is that

12   in that motion or is that a motion that those claiming or

13   considering the claim of taint intend to make in this action?

14           MR. GREENBERG:  I would say just quickly to answer,

15   certainly it's going to be raised for Your Honor's

16   consideration as to the indictment here, the one before you

17   now, and if we're not foreclosed by some doctrine of res

18   judicata or something, it would be made in a motion to dismiss

19   when we come to motion practice in this criminal case so --

20           THE COURT:  But it's likely to be -- the substance

21   is likely to be raised in a civil case first.

22           MR. GREENBERG:  Yes.  Most definitely.

23           MS. FRITZ:  In the civil case we'll be arguing that

24   the forward motion of the case, even though Your Honor had

25   stayed the case, was improper, but that's as far as we would

1   get on the civil side.  Based on the argument that that was

2   improper we'll then be arguing in this proceeding that it

3   tainted the superseding indictment.  So that piece of it will

4   be argued in the criminal side.

5           THE COURT:  So essentially then any action by the

6   SEC in an investigatory manner, to the extent that those

7   investigatory actions provided aid and comfort to the

8   government in this case, essentially that's the taint, is that

9   it?

10          MR. BRUNO:  Yes, Your Honor.

11          MR. GREENBERG:  Yes.

12          MR. BIRNBAUM:  Your Honor, if I may.  Michael

13  Birnbaum, I'm here from the SEC and I didn't want everybody to

14  proceed under the illusion that we were not present for a

15  hearing.  If Your Honor has any questions, I'm happy to be

16  heard.  I'm also happy to let the criminal case proceed as it

17  is.

18          My understanding is simply our briefing schedule

19  addresses a motion to amend, which will be filed on the

20  schedule Your Honor approved and we'll move from there.

21          THE COURT:  And you may hear some of these

22  arguments, Mr. Birnbaum, in that matter.

23          MR. BIRNBAUM:  I appreciate the preview.

24          THE COURT:  Mr. Paes appreciates the preview too.  I

25  don't know about me.  I'm the only one that doesn't appreciate

PROCEEDINGS                                29

1   it.

2          MR. GREENBERG:  We were hoping Your Honor would

3   also.

4          THE COURT:  It's always good to know when the light

5   at the end of the tunnel is the train coming in the opposite

6   direction.  Okay.

7          Any other good news? All right.  My inclination,

8   Ms. Fritz, is to let the case role forward until we meet

9   again.  It seems to me that motion practice is premature at

10  this time given the posture of the case.  You may want to

11  immerse yourself.  You may not want to immerse yourself.  You

12  may be confident in your motion practice that you think

13  learning about the case is, at this stage, is not necessary,

14  but that's for you and your client to decide.

15         MS. FRITZ:  Understood.  Thank you.

16         MR. BRUNO:  Thank you, Your Honor.

17         THE COURT:  So wrapping up, Ms. Jones and Mr. Paes,

18  we are -- as of right now the next item of business is

19  March 18th.

20         MS. JONES:  Yes.  And, Your Honor, I think that the

21  Court has previously designated this case as complex and --

22         THE COURT:  Yes.  If I hadn't, I should have my head

23  examined.

24         MS. JONES:  And we do, for that reason, we have --

25  people are preparing discovery, preparing what they're going

PROCEEDINGS                                          30

1  to do for their motions.  We request that the speedy clock --

2  speedy trial clock be stayed between now and March 18th.

3          THE COURT:  I know some of the defendants object to

4  that so I can't say what the -- without the objection of any

5  party, but whether they concur or whether they object, it

6  seems to me that in the interest of justice, the posture of

7  this case should require that the motion to exclude time is

8  granted as well.  So we will see you all on March 18th.

9          MR. BRUNO:  Thank you, Judge.

10         THE COURT:  At 11:00 I assume, right, William?

11         COURTROOM DEPUTY:  No.  It's 10:00 but.

12         THE COURT:  At 10:00.  I was wrong.  I was wrong on

13 the date and I was wrong on the time.  That's perfect.

14         All right.  March 18th at 10:00 a.m.  I guess happy

15 holidays, everything except Easter, which will be about two

16 weeks after we meet again, in between.

17         So thank you, gentlemen, ladies, and we'll see you

18 then.

19         MR. BRUNO:  Thank you, Judge.

20         MS. JONES:  Thank you.

21         MS. FRITZ:  Thank you.

22         (Time noted: 11:55 a.m.)

23

24

25

ANGELA GRANT, RPR, CRR
*I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter*
/s/ Angela Grant  November 23, 2015