**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**----------------------------------------------------------X**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| -V- | :     S-1 14 CR. 399 (ENV) |
| **ABRAXIS DISCALA, ET AL.,** | : |
| Defendants. | : |

**----------------------------------------------------------X**


# DEFENDANT KYLEEN CANE'S
# FIRST SET OF
# *IN LIMINE* MOTIONS



**SERCARZ & RIOPELLE, LLP**
810 Seventh Avenue, Suite 620
New York, NY  10019
(212) 586-4900

*Attorneys for Defendant*
*Kyleen Cane*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND........................................................................................................1

ARGUMENT..................................................................................................................................3

I.     THE RECORDINGS AND TEXTS OFFERED BY CANE ARE ADMISSIBLE ON A
       VARIETY OF GROUNDS ................................................................................................3

       A. Applicable Law .........................................................................................................3
           1. The Rule of Completeness ..................................................................................3
           2. Federal Rule of Evidence 806 .............................................................................8
           3. The Residual Hearsay Exception ......................................................................10

CONCLUSION ............................................................................................................................13

# TABLE OF AUTHORITIES

## Cases

*United States v. Agajanian*, 852 F.2d 56 (2d Cir. 1988) ................................................................9

*United States v. Capaldo*, 402 F.2d 821 (2d Cir. 1968) .................................................................4

*United States v. Jackson*, 180 F.3d 55 (2d Cir. 1999) ....................................................................4

*United States v. Marin*, 669 F.2d 73 (2d Cir. 1982) .......................................................................4

*United States v. Myerson*, 18 F.3d 153 (2d Cir. 1994) ..................................................................9

*United States v. Rubin*, 609 F.2d 51 (2d Cir. 1972) .......................................................................4

*United States v. Shafi*, 1993 WL 14483 (S.D.N.Y. 1993) ..............................................................9

*United States v. Wali*, 860 F.2d 588, (3d Cir. 1988) .....................................................................9

## Rules

Fed. R. Evid. 106 ....................................................................................................................2, 3, 5, 7

Fed. R. Evid. 611 .................................................................................................................................5

Fed. R. Evid. 806 .......................................................................................................................2, 8, 9

Fed. R. Evid. 807 ..........................................................................................................................3, 10

## PRELIMINARY STATEMENT

Defendant Kyleen Cane ("Cane") submits this memorandum of law in support of her motions *in limine*. Cane moves *in limine* for: (i) an order ruling that certain intercepted telephone calls overheard on her co-defendant Abraxis Discala's ("Discala") telephone are admissible if offered by Cane; and (ii) an order ruling that certain text messages sent and received on her co-defendant Abraxis Discala's ("Discala") telephone are admissible if offered by Cane. Cane respectfully submits that her motions should be granted for the following reasons.[1]

## FACTUAL BACKGROUND

The government has now provided Cane with its preliminary exhibit list and copies of the exhibits it intends to offer. Cane has reviewed these items promptly. The exhibits produced by the government include scores of intercepted texts and conversations that the government obtained pursuant to its wiretap of Discala's telephone in May and June 2014. The intercepted texts and conversations address a broad array of topics, including the Cubed transaction described in the S-1 Indictment.

The scores of wiretap conversations the government will offer in evidence do not include *seven* brief conversations that the government recorded during the wiretap of Discala's phone. Nor do the texts offered by the government include a series of texts sent and received by Discala's telephone on the morning of May 23, 2014, when the price of Cubed stock spiked

---

[1] This motion *in limine* is made on the assumption that the Court will deny Mr. Discala's motion to suppress the evidence resulting from the wiretap of his telephone. Cane has joined her co-defendant Discala's motion to suppress the conversations and texts that were intercepted by the government and in Discala's motion for a *Franks* hearing. In the event the Court finds that the government's evidence should be suppressed, Cane will withdraw this motion, which is addressed primarily to gaps in the evidence proffered by the government. That is, Cane offers the limited number of exhibits described below to place the government's evidence in context, explain the nature of the government's evidence, and to avoid misunderstanding by the jury. If the Court rules that the government's evidence is inadmissible, there is no need for the evidence Cane proffers in this motion.

1

upward. Cane contends that these intercepted conversations and texts should, in fairness, be admitted in evidence at trial. Cane respectfully submits that these conversations and texts are admissible on a number of grounds, and must be admitted in evidence so that the jury can reach a fair verdict in this case.

The seven conversations Cane seeks to admit are brief, and can be played for the jury in their entirety in a little over a half hour of trial time. In the event the Court rules that certain 404(b) evidence offered by the government concerning transactions other than those described in the S-1 Indictment is inadmissible, then these tapes can be edited down by deleting the references to irrelevant transactions, and the time to play the tapes will be even shorter – well under a half hour. For the convenience of the Court and the parties, copies of the recordings are provided on the CD Rom marked Exhibit A, which is being delivered to all parties together with this brief, so that the Court and the parties can listen to the tape recordings and argue their relevance.

The text messages that Cane seeks to admit are also brief and limited. Copies of the texts are attached to this brief as Exhibit B. As the Court can see, most of the messages are a single line, and some are just a few words in length. All of them concern the spike in the price of Cubed stock on May 23, 2014, which the S-1 Indictment describes in detail, and which appears to form a significant part of the government's case against Cane. *See* S-1 Indictment, ¶¶ 40-41.

Cane respectfully submits that these limited recordings and text messages should be admitted at trial, to provide the jury with context for the other text messages and wiretap interceptions they will hear; to prevent misleading the jury; and to ensure a fair and impartial understanding of the recordings and texts offered by the government. *See* Fed. R. Evid. 106. In addition, these recordings and text messages should be admitted pursuant to Fed. R. Evid. 806

2

and 807, because they impeach the credibility of certain hearsay declarants; because the statements at issue have circumstantial guarantees of trustworthiness; and because admitting them will best serve the purposes of the rules of Evidence and the interests of justice.

## ARGUMENT

### I. THE RECORDINGS AND TEXTS OFFERED BY CANE ARE ADMISSIBLE ON A VARIETY OF GROUNDS

#### A. Applicable Law

Cane proffers the intercepted phone calls and texts at issue pursuant to three different rules of Evidence. First, the recorded conversations and intercepted texts are offered pursuant to the Rule of Completeness, Fed. R. Evid. 106. Second, they are offered pursuant to Fed. R. Evid. 806, because the conversations and texts offered by Cane are inconsistent with the declarations made by the persons who are declarants in the interceptions and texts proffered by the government. Third, the evidence proffered by Cane is admissible pursuant to the Residual Exception to the hearsay rule, Fed. R. Evid. 807. The evidence Cane proffers is admissible pursuant to all these rules.

#### 1. The Rule of Completeness

Federal Rule of Evidence 106 provides as follows:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time.

The Circuit Court has approved the admission of additional statements or writings where the evidence offered by the government does not tell the "whole story" and fairness requires that the defendant be permitted to offer additional statements or writings to "explain," "place in context" or "ensure fair and impartial understanding of the admitted portion" offered by the government. *See United States v. Castro,* 813 F.2d 571, 575-76 (2d Cir. 1987), *citing United*

3

*States v. Marin,* 669 F.2d 73, 84 (2d Cir. 1982), *United States v. Rubin,* 609 F.2d 51, 63 (2d Cir. 1972), *aff'd,* 449 U.S. 424 (1981), and *United States v. Capaldo,* 402 F.2d 821, 824 (2d Cir. 1968), *cert. denied,* 394 U.S. 989 (1969); *and see United States v. Jackson,* 180 F.3d 55, 73 (2d Cir. 1999).

In the present case, the government will offer scores of tape-recorded conversations and text messages. The government will argue to the jury that these communications establish a conspiracy involving Cane, in which the charged conspirators acted in concert to issue misleading press releases and execute wash and matched trades as part of a scheme to pump the price of Cubed stock up before dumping it on an unsuspecting market. The tape recordings proffered by Cane add context and explanation to the recordings offered by the government. They tell a very different story.

In the first of these recordings, intercepted on May 6, 2014 at 9:48:31 a.m., Discala and an unindicted co-conspirator named Paul Turino complain bitterly about Cane's resistance to issuing press releases concerning developments at Cubed. Cane's actions in this regard are entirely inconsistent with the theory that she is conspiring with Discala and Turino to issue press releases to pump up the price of Cubed. This tape recording should be admitted to help the jury understand Cane's role in the alleged conspiracy, and to give context to other tape recordings the government will offer concerning Cubed press releases. Without the admission of recordings such as this one, there is a significant chance the jury will be misled as to the relationship of Cane to the conspiracy and co-conspirators alleged in the S-1 Indictment.

The second recording proffered by Cane was intercepted on May 7, 2014 at 9:34:01 a.m. The speakers on this recording are Discala and Steven White, another unindicted co-conspirator.

4

In this call, Discala and White discuss keeping the conspirators away from Cane and keeping her in the dark, because she will prevent the issuance of press releases for the purpose of providing trading opportunities to Discala and the brokers who were allegedly conspiring with him and others to create interest in Cubed stock through wash and matched trades. This recording also gives context to the recordings offered by the government and will help clarify the relationship between Cane and her alleged co-conspirators. Cane respectfully submits that this recording should also be admitted because, "in fairness" it "ought to be considered" together with the recordings offered by the government. Fed. R. Evid. 106; *and see* Fed. R. Evid. 611.

The third recording proffered by Cane was intercepted on May 8, 2014, at 9:20:43 a.m. In this tape, Discala explains to an investor the nature of the escrow account established by Cane to prevent a wholesale "dump" of Cubed stock by the investors recruited by Discala. The explanation of Cane's escrow account of Cubed stock should be admitted so that the jury is not misled as to the nature of the escrow account. In addition, this tape recording gives context to the tapes offered by the government that refer to the escrow account. In fairness, the jury should be permitted to hear an explanation of how the escrow account was intended to work, so that it is not misled as to Cane's intent when she established the account. Fed. R. Evid. 106.

The fourth recording proffered by Cane was intercepted on May 8, 2014 at 2:08:25 p.m. It is a conversation between Discala and Steven White, in which White complains about Cane's refusal to authorize the release of press releases concerning Cubed's business. This recording clarifies and gives context to the recordings the government will offer to argue that Cane was a knowing and willing participant in the conspiracy charged in the S-1 Indictment. It should be

5

admitted so that the complete story of Cane's relationship with her alleged co-conspirators can be understood and considered by the jury.

The fifth recording proffered by Cane was intercepted on May 8, 2014 at 10:31:22 p.m. The recording is a conversation between Discala and an investor in Cubed. Three minutes into the conversation, there is an extended description of the purpose of the escrow account established by Cane. There is also a description by Discala of a "participation agreement" that Cane did not draft and was not aware of. This conversation should be admitted because it gives context to the conversations the government will offer in which the escrow account is mentioned. It should also be admitted because it demonstrates that Cane was not party to aspects of the alleged conspiracy – in this case, the "participation agreement" that is discussed in the intercepted call. Thus, this recording is exculpatory evidence as to Cane, and it should be admitted in fairness for the jury to consider when it deliberates on the nature and scope of Cane's relationship to the conspiracy charged in the S-1 Indictment.

The sixth recording proffered by Cane was intercepted on June 3, 2014 at 9:44:31 a.m. This recording is a telephone call between Discala and a broker concerning trading in Cubed. In this call, Discala and the broker (an unindicted co-conspirator) complain bitterly about the failure of the broker used by Cane to sell shares from the escrow account to adjust the price at which shares from the escrow account are offered to the market. In this call, Discala and the broker complain that the lack of price movement by the broker handling the escrow account shares is impeding their ability to increase the price of Cubed shares in the market. This call is clearly relevant to tell the "whole story" of the trades made by the escrow account in Cubed shares. This call rebuts the government's assertion that Cane was acting in concert with Discala and the series of brokers whom the government contends were attempting to manipulate the price of

Cubed. It should be admitted pursuant to Fed. R. Evid. 106, so the jury is not misled by the government's proof.

The seventh and last recording proffered by Cane was intercepted on June 6, 2014 at 7:37:20 a.m. It is a call between Discala and an individual named Michael Wehrs, and at 1 minute into the call, there is an extensive discussion of a legitimate purpose of the escrow account established by Cane. As this recording demonstrates, the escrow account was intended to protect Cubed shares from aggressive shorting of Cubed shares, allowing an orderly market in Cubed to develop. Thus, this recording gives context and explanation to the other interceptions proffered by the government concerning the escrow account, and it should be admitted to tell the complete story of the escrow account and Cane's establishment of it. *See* Fed. R. Evid. 106.

The text messages proffered by Cane and attached to this brief as Exhibit B were all sent and received by Discala's telephone on May 23, 2014, a key date that is highlighted in the S-1 Indictment. These text messages were sent or received by Discala, Marc Wexler and Victor Azrack, all of whom the government charges were co-conspirators in the scheme to manipulate the price of Cubed shares through wash sales, matched orders and hyperbolic press releases. These 15 text messages were all sent in the morning of May 23, 2014, before Discala or anyone else had spoken to Cane. In the 15 text messages, Wexler and Azrack are exultant at the spike in the price of Cubed stock on the morning of May 23, 2014, and they can be seen coordinating their own trading activity to support the spike in price and profit from it. The view of Wexler

7

and Azrack in these text messages is that the spike in the price of Cubed shares is a good thing and a profit opportunity, which they should manage their trading to support and preserve.

This view is, of course, utterly inconsistent with Cane's view on May 23, 2014. Cane's view was expressed later in the day on a tape-recorded phone call marked as Government Exhibit 198-28, in which Cane speaks to Discala about the spike in Cubed's price. In that call, Cane is clearly confused by the unanticipated spike in the price of Cubed shares, and wary of the fact that that the spike in Cubed's price has occurred. Unlike Azrack and Wexler, Cane views the spike in price as a bad thing, and she suggests that shares should be sold to keep the price of Cubed at a reasonable level, saying "we need to keep it [the price of Cubed shares] back down." GX 198-28, 198-28T.

The texts proffered by Cane should be admitted to give a full picture of the events on May 23, 2014, and give context to the telephone calls and text messages that the government will offer from that day concerning the spike in the price of Cubed shares. The government should not be permitted to tell only a part of the story from the events of May 23, 2014 by excising key text messages between the alleged co-conspirators. Instead, a full version of the events should be considered by the jury through the admission of the 15 text messages proffered by Cane, together with the other evidence offered by the government.

### 2. **Federal Rule of Evidence 806**

Federal Rule of Evidence 806 provides that when a statement has been admitted in evidence as a statement in furtherance of a conspiracy,

> … the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. The court may admit evidence

8

>of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it.

The Courts have often found that hearsay statements that are inconsistent with hearsay or admissions offered by the government should be admitted to impeach the hearsay declarants of the statements offered by the government. *See United States v. Myerson*, 18 F.3d 153, 161 (2d Cir. 1994) (there was "little question" that the impeaching evidence offered by defense pursuant to Fed. R. 806 was admissible); *United States v. Wali*, 860 F.2d 588, 591 (3d Cir. 1988); *United States v. Shafi*, 1993 WL 14483 (S.D.N.Y. 1993). Moreover, "statements need not be diametrically opposed to be inconsistent." *United States v. Agajanian*, 852 F.2d 56, 58 (2d Cir. 1988); *Wali, supra,* 860 F.2d at 591. If the statements offered by the defense are sufficiently inconsistent with the statements offered by the government to be admissible for impeachment purposes, they should be admitted pursuant to Fed. R. Evid. 806.

Cane respectfully submits that the recordings and text messages she proffers are inconsistent with the recordings and text messages proffered by the government. The government has proffered a series of recordings and text messages that purport to illustrate a well-oiled and efficient conspiracy to manipulate the price of Cubed shares, which includes Cane as a participant. The recordings and text messages proffered by Cane impeach this view. They show a significant amount of disagreement between Cane and her alleged co-conspirators concerning several key issues in the case, such as the issuance of press releases to prompt trading in Cubed shares, and the virtues of a spike in the price of Cubed shares on May 23, 2014. These inconsistencies are sufficient to warrant the cross examination and impeachment of Wexler, Azrack and other hearsay declarants such as Steven White and Paul Turino who can be overheard on the wiretaps and texts proffered by the government, and who, if called by the

9

government, would testify that a conspiracy existed and that Cane was a member of it. Therefore, Federal Rule of Evidence 806 authorizes the Court to admit these exhibits because they impeach the credibility of hearsay declarants whose hearsay statements will be proffered by the government in its case in chief.

### 3. The Residual Hearsay Exception

Federal Rule of Evidence 807, the "residual exception" to the hearsay rule, permits admission in evidence of hearsay statements such as those offered by Cane where:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
>
> (2) it is offered as evidence of a material fact;
>
> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>
> (4) admitting it will best serve the purposes of these rules and the interests of justice.

In the present case, the statements offered by Cane have strong circumstantial guarantees of trustworthiness, which are equivalent to the circumstantial guarantees of trustworthiness inherent in the evidence offered by the government. The statements offered by Cane were recorded and can easily be authenticated by the government's agent; the statements were made long before any of the alleged co-conspirators suspected they were being investigated and might therefore be inclined to make false exculpatory statements; the statements were spontaneously made in response to events contemporaneously observed when the statements were made; and, in

many cases, the statements are made against the interest of the speaker or writer, because they tend to be incriminating.

The statements are also offered by Cane as proof of a material fact – that she was not a member of the conspiracy charged in the S-1 Indictment, and that she took actions contrary to the goals, means and methods of the alleged conspiracy. Cane took actions contrary to the alleged conspiracy when she advocated against the release of press releases concerning Cubed, and when she recommended against encouraging the spike in the price of Cubed's shares on May 23, 2014, all of which is demonstrated in the evidence she proffers. Proof of these actions is significant and material proof that Cane was not a conspirator with Discala, Wexler, Azrack and others as alleged in the S-1 Indictment, and it should, in fairness, be admitted.

The evidence proffered by Cane is also more probative on the point than any other evidence she could offer, including her own testimony, or the testimony of her alleged co-conspirators. If Cane were to testify and deny her membership in the alleged conspiracy, her testimony would almost certainly be discounted by the jury because of Cane's evident interest in the outcome of this case. Indeed, if Cane were disbelieved because of her interest in this case, her testimony might well do more harm to her than good. The recordings and texts proffered by Cane are a very different matter, because they cannot be impeached on the grounds that the statements made are those of a biased witness with an interest in the outcome of this case. To the contrary, the statements proffered by Cane were made by their speakers at a time when none of

11

them suspected *there would ever be a criminal case*, and the statements are therefore all the more credible.

Moreover, the statements proffered by Cane are far more credible and probative than any testimony she might offer from her alleged co-defendants.  Presumably, some of Cane's alleged co-defendants (Wexler, Azrack and perhaps others) will testify at trial, pursuant to cooperation agreements they have signed with the government.  Those cooperation agreements will certainly encourage these witnesses – who will have a lot on the line – to testify favorably to the government, and in a biased fashion.  Their contemporaneous, unbiased statements contained in the tape recordings and texts are far more probative of issues in this case than their testimony at trial will be.  Indeed, the government acknowledges this fact by marking scores of the intercepted conversations and texts as evidence – the government realizes that these contemporaneous statements are more persuasive evidence than the biased testimony of a cavalcade of immunized witnesses who will sing for their supper at trial.

Finally, to the extent that some unindicted co-conspirators have not been immunized by the government in exchange for their cooperation with this prosecution – witnesses such as Michael Wehrs or Steven White, perhaps – such witnesses are extremely unlikely to take the witness stand, and even less likely tell the truth if they do so.  With a very much alive Fifth Amendment right, it is fair to suspect these witnesses will never testify without immunity if they are subpoenaed by the defense.  In addition, if these witnesses were willing to testify without some grant of immunity from the government, there is no reason to suspect they would say anything to irritate the government or prompt it to consider bringing a prosecution against the witnesses themselves.  In other words, it is only fair to anticipate that the witnesses will testify in support of the indictment, despite their statements on the wiretap interceptions and texts to the

12

contrary. So here, too, the contemporaneous, intercepted communications are far better evidence of the facts than the testimony of these witnesses might be.

For all these reasons, as well as those argued in connection with Federal Rules of Evidence 106 and 806, the statements proffered by Cane should be admitted pursuant to Federal Rule of 807.

## CONCLUSION

For all the reasons stated herein, Defendant Kyleen Cane respectfully requests that her motion *in limine* be granted in all respects.

Dated: January 3, 2018
    New York, New York

> Respectfully submitted,
> SERCARZ & RIOPELLE, LLP
>
> By: /s/ Roland G. Riopelle
> Roland G. Riopelle, Esq.
> Robert Caliendo, Esq.
> 810 Seventh Avenue, Suite 620
> New York, NY 10019
> (212) 586-4900
>
> *Attorneys for Defendant*
> *Kyleen Cane*

13