UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA,            :

    -V-                                              :        S-1 14 CR. 399 (ENV)

ABRAXIS DISCALA, <u>ET AL.</u>,               :

        Defendants.                          :

-----------------------------------------------------------X

# DEFENDANT KYLEEN CANE'S
# THIRD MOTION *IN LIMINE*

**SERCARZ & RIOPELLE, LLP**
810 Seventh Avenue, Suite 620
New York, NY  10019
(212) 586-4900

*Attorneys for Defendant
Kyleen Cane*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND .................................................................................. 1

ARGUMENT

POINT I

THE TESTIMONY OF EDGERTON, GODFREY, SCOGGINS AND
WASHINGTON SHOULD BE PRECLUDED ........................................................ 5

CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*United States v. Camuti*, 78 F.3d 738 (1st Cir. 1996)...................................................7

*United States v. Harvey*, 991 F.2d 981 (2d Cir. 1993) ................................................10

*United States v. Malpeso,* 115 F.3d 155 (2d Cir. 1997) ..........................................7, 10

*United States v. Quinto*, 582 F.2d 224 (2d Cir. 1978)..................................................7

**Rules**

Federal Rule of Evidence 401 ...................................................................................6, 7

originally formed in 2011 to mine for gold and other precious metals in Nevada, but which had, by early 2014, no revenues, and was unable to continue operating as a mining company. As described in the S-1 Indictment, Northwest was the shell company that became Cubed, Inc. ("Cubed") in early 2014, as an early step in the transaction by which Cubed became a public company.

The 3500 Material indicates that Edgerton was the person who formed and became Chief Executive Officer ("CEO") of Northwest in 2011. Godfrey, Scoggins and Washington were apparently passive investors in Northwest, although none of them recalled making the investment at the time Northwest was formed, six years prior to their respective interviews.[1]

At the time Edgerton was interviewed by the FBI, he indicated that he did not know Scoggins. However, Edgerton stated that he persuaded Northwest's shareholders to invest in Northwest by explaining his intention to operate Northwest as a mining company. Edgerton also indicated that he was paid back his initial investment in Northwest, in exchange for transferring his shares in Northwest to Cubed's investors. According to Edgerton, Northwest's attorney was Joe Laxague, Cane's partner. Edgerton stated that he "does not personally know

---

[1] Copies of the relevant reports are attached to this Brief as Exhibit A.

2

KYLEEN CANE" and he has "never communicated with KYLEEN CANE." Exhibit A.

When Godfrey was interviewed on December 11, 2017, he initially stated that he did not recall his 2011 investment in Northwest. After being shown documentation relating to his investment, Godfrey acknowledged that his handwriting appeared on some of the documentation relating to his investment, but he denied that some of the handwriting was his, and he indicated that his Social Security Number was incorrectly entered on the Northwest subscription agreement. Godfrey also denied knowing Edgerton, and told the FBI agent who interviewed him that he invested in Northwest based on a pitch made by an unidentified male, outside a Smith's Grocery Store. Godfrey believed he had been paid $40 to sign the documents relating to his investment in Northwest. Godfrey indicated that he was unaware that his shares of Northwest stock had been sold as a step in the transaction to form Cubed in 2014, and he denied knowing that his shares had been transferred to a Cubed investor named Oxbridge Technology Partners, Inc. Godfrey also denied knowing Kyleen Cane, Joe Laxague or the firm Cane Clark LLP. *See* Exhibit A.

Scoggins was interviewed on December 6, 2017, and he, too, did not initially recall investing in Northwest. However, after being shown a check and a Northwest subscription agreement in his handwriting, Scoggins acknowledged that

3

he had apparently made an investment in Northwest. Scoggins then recalled that Joe Laxague of Cane Clark, LLP had recommended the investment in Northwest. But Scoggins did not recall Edgerton or Cane, and denied knowing anything about Cubed or the transaction by which Northwest changed its name and became Cubed. And according to Scoggins, a $20,000 check payable to him and drawn on a Cane Clark LLP account did not relate to the sale of his Northwest shares to the investors in Cubed. Scoggins claimed to have no knowledge that his shares in Northwest had been transferred to investors in Cubed. *See* Exhibit A.

When Washington was interviewed on November 30, 2017, he also denied having any knowledge of an investment in Northwest. Washington indicated that the handwriting on a Northwestern subscription agreement in his name was not his, and stated that the handwriting on a MoneyGram relating to the investment was not his either. Washington denied knowing Edgerton, Cane, and Cane Clark LLP, and he denied knowing anything about the transaction by which his shares in Northwest were transferred to Cubed. Washington did, however, recognize a picture of Scoggins, and identified Scoggins as a barber who had cut Washington's hair during the period from 2006 to 2008. *See* Exhibit A.

Thus, none of these witnesses are able to provide any evidence linking Cane to the transaction by which Northwest was originally formed, or the transaction by which they sold their Northwest shares to investors in Cubed. The testimony the

4

witnesses have to offer is curious and sounds suspicious, but none of the testimony establishes that a crime was committed when the witnesses invested in Northwest or when they were eventually cashed out of that investment. Given the lack of any connection between Cane and this testimony, Cane respectfully submits that the testimony is irrelevant to the S-1 Indictment's allegations of a "pump and dump" scheme in Cubed shares, and it should be precluded.

## ARGUMENT

### POINT I
### THE TESTIMONY OF EDGERTON, GODFREY SCOGGINS AND WASHINGTON SHOULD BE PRECLUDED

The proffered testimony contains no proof that Cane was involved in the formation of Northwest or knew the details of that transaction. Nor does the proffered testimony contain any proof that Edgerton, Godfrey, Scoggins and Washington knew Cane to be involved in the transaction by which they sold their Northwest shares to the investors in Cubed; or that Cane had any direct role in that transaction; or that Cane had any knowledge of the manner in which Edgerston, Godfrey, Scoggins and Washington acquired their shares in Northwest. In the absence of such proof, the testimony these witnesses might give is irrelevant to the allegations against Cane. It is also confusing, distracting, and prejudicial to Cane.

5

It should therefore be precluded pursuant to Federal Rules of Evidence 401 and 403.

> Federal Rule of Evidence 401 provides:
>> Evidence is relevant if:
>> (a) It has any tendency to make a fact more or less probable than it would be without the evidence; and
>> (b) the fact is of consequence in determining the action.

It is of no "consequence to the determination" of the charges in the S-1 Indictment against Cane whether or not Edgerton, Godfrey, Scoggins and Washington invested in Northwest in 2011, or who convinced them to invest in 2011, or how their shares were ultimately purchased by and transferred to the investors in Cubed in 2014. The events in 2011 concerning the initial formation of Northwest, which are now very remote in time, and are, at best, vaguely recalled by the witnesses, do not make it more or less likely that the shares of Cubed were pumped and dumped by Cane, Discala and others three years later, in 2014. If someone other than Edgerton, Godfrey, Scoggins and Washington signed their names on the documentation relating to their purchase of Northwest shares or their sales of Northwest shares, that fact does not prove anything about the later transactions in Cubed shares that are the heart of the S-1 Indictment's allegations. *See* Exhibit A.

Indeed, the fact that Edgerton, Godfrey, Scoggins and Washington were cashed out of their Northwest shares in 2014 does not make it more or less likely that the defendants later manipulated the price of Cubed, even if one or more of the proffered witnesses cannot recall the sale of their Northwest shares. The sale of Northwest's shares simply tells us nothing about whether Cubed's shares were later manipulated. And the fact that the Northwest shares were ultimately purchased by investors in Cubed does not make it more or less likely that shares of Cubed were manipulated in the Spring and early Summer of 2014, either. Therefore, even though the witnesses sound a bit sketchy in the reports written by the agent who interviewed them, and even though some vaguely remembered details about their investments in Northwest might sound suspicious, the testimony these witnesses could give is irrelevant to the allegations in the S-1 Indictment. *See* Fed. R. Evid. 401; *and see United States v. Quinto*, 582 F.2d 224 (2d Cir. 1978) (prior consistent statement of witness was irrelevant, and admission of statement was prejudicial, requiring reversal); *United States v. Camuti*, 78 F.3d 738 (1st Cir. 1996) (proffered evidence remote from the transactions charged as fraud was properly excluded as irrelevant and speculative); *United States v. Malpeso*, 115 F.3d 155, 163 (2d Cir. 1997) (proffered evidence of law enforcement misconduct was irrelevant to charges growing out of the "Columbo War"), *cert. denied*, 525 U.S. 951 (1998). This is particularly so when none of these witnesses

7

ever dealt with or even met Cane or any other defendant charged in the S-1 Indictment. *See* Exhibit A.

Moreover, given the odd and suspicious sounding nature of the reports – which include evasive answers from the prospective witnesses, hints of forgery, stock pitches in a grocery store parking lot, and an alleged lack of awareness that the Northwestern shares were sold to Cubed's investors – the prejudice that would be done to Cane by allowing this proof is substantial. The inconsistent and vague stories told by the prospective witnesses just sound a little fugazy, and the whiff of impropriety in their testimony may very well tip the jury's verdict against Cane, even though none of the witnesses has any direct knowledge that can link Cane to the transactions they describe. Indeed, as odd as the transactions described by the witnesses sound, none of the witnesses appear to have been victimized (they all received more for their Northwestern shares than the amounts they paid, and in some cases were given the funds they used to purchase the very Northwestern shares they later sold). In the absence of some harm done to these witnesses, their testimony is not even arguably relevant to the charges in the S-1 Indictment.

In addition, the interviews of Edgerton, Godfrey, Scoggins and Washington do not contain any suggestion that Cane was aware of the details of the transactions in 2011 by which they acquired their Northwest shares, or that Cane was aware of the details of the transaction in 2014 by which they sold their

8

Northwest shares to Cubed's investors. In the absence of any proof that Cane was aware of the details of these transactions, those details, however titillating, are irrelevant to the case against her. In other words, the odd sounding nature of the transactions described by the prospective witnesses could, conceivably be "conditionally relevant" – they would arguably be relevant if the government could show Cane was personally aware of the odd nature of the transactions, because the government might then argue that Cane must have known the transactions were suspicious. But in the absence of any proof that Cane knew of the peculiar details reported by the witnesses, those details are utterly irrelevant to the case against Cane.

Indeed, it appears the government wants to proffer the testimony of Edgerton, Godfrey, Scoggins and Washington precisely for the purpose of dirtying up the record, because the proffered testimony sounds suspicious, and may therefore convince the jury to convict on the basis of its suspicions rather than the proof of the alleged manipulation of Cubed stock. This is exactly the sort of "unfair prejudice, confus[ion] of the issues, [and] misleading the jury" that Federal Rule of Evidence 403 warns against, even when proffered evidence is relevant. In this case, the proffered evidence is *not relevant*, and therefore, the strong prejudice attached to it and the likelihood it will mislead the jury clearly weigh in favor of excluding the evidence altogether. *See United States v. Harvey*, 991 F.2d 981 (2d

9

Cir. 1993) (in prosecution for possession of child pornography, admission of evidence concerning defendant's possession of other forms of pornography was erroneous, because such evidence was irrelevant to the charges, inflammatory and prejudicial); *United States v. Malpeso, supra,* 115 F.3d at 163 ("even if the evidence were of some marginal relevance, that relevance is far outweighed by the risk of prejudice").

Finally, the Court should preclude the testimony of Edgerton, Godfrey, Scoggins and Washington, because their testimony will concern transactions in Northwest shares in 2011 and 2014 that preceded and do not directly relate to the transactions at issue in the indictment. Testimony about these transactions will result in a series of mini-trials on collateral issues that are certain to distract and confuse the jury. If these witnesses testify, the litigants will need to explore a myriad of issues that will lead the Court and jury on a long trip down a series of rabbit holes they may not escape. For example, if these witnesses testify, the litigants will need to explore the question whether particular documents were forged, and if so, who did the forging? The litigants will need to inquire into whether the mysterious stock promoter in the parking lot of a supermarket was Edgerton, or someone else associated with Edgerton. And the litigants will need to determine whether Edgerton effectively stole the Northwest shares of the other witnesses, when he delivered those shares to Cubed's investors without the other

10

witnesses' knowledge. These are just a few examples of the collateral issues that will need to be fully explored if Edgerton, Godfrey, Scoggins and Washington testify about their experience as shareholders of Northwest in 2011 and 2014.

The testimony of Edgerton, Godfrey, Scoggins and Washington is bound to result in a series of mini-trials on issues like these and other issues that are entirely collateral to the allegations of stock manipulation contained in the S-1 Indictment. These mini-trials will confuse and distract the jury. The testimony proffered by the government should therefore be precluded.

## CONCLUSION

For all the foregoing reasons, Defendant Cane respectfully requests that the Court grant her Third Motion *in Limine*, and enter an order precluding Taylor Edgerton, Marche Lamont Godfrey, Gary Andre Edward Scoggins and Chad Dishon Washington from testifying in this case.

Dated: New York, New York
       January 24, 2018

                                                    Respectfully submitted,
                                                    SERCARZ & RIOPELLE, LLP

By: /s/ Roland G. Riopelle
      Roland G. Riopelle, Esq.
      Robert Caliendo, Esq.
      810 Seventh Avenue, Suite 620
      New York, NY 10019
      (212) 586-4900

      *Attorneys for Defendant*
      *Kyleen Cane*