# EXHIBIT A

FD-302 (Rev 5-8-10)

- 1 of 3 -


OFFICIAL RECORD

# FEDERAL BUREAU OF INVESTIGATION

Date of entry  12/04/2017

    TAYLOR EDGERTON, date of birth (DOB) ■■■1978, social security account number (SSAN) ■■■■■ cell phone number ■■■7665, was interviewed at his primary residence ■■■■■ RENO, NEVADA. After being advised of the identity of the interviewing Agent and the nature of the interview, EDGERTON provided the following information:

  EDGERTON was served a subpoena from the Eastern District of New York for case no 14 CR 399 (S-1).

  EDGERTON recognized the letter (attached in originating lead) to DAVID LOPEZ after examination. He doesn't recall exactly what the purpose of the letter was, but guesses that it had to do with the initial appraisal of the area they wanted to mine for gold and other precious metals.

  EDGERTON knows all of the people listed as friends in the letter. He refused to answer how he knew all of the people listed. He said if it was absolutely necessary he would take the time to say how he knew each person.

  EDGERTON convinced people to invest by explaining that they had identified an area of land where they would be able to mine for gold and other precious minerals. Furthermore, he needed money to verify how much gold was in the area and if it was extractable. The investors knew they were investing in NORTHWEST RESOURCES INC. They knew they were investing in a mining venture.

  EDGERTON doesn't know GARY SCROGGINS and assumes he must have been paid $20,000 for services rendered.

  EDGERTON doesn't know if the investors were made aware that their shares had been transferred to CUBED INC. He doesn't know if they received stock certificates. His lawyer, JOE LAXAGUE, took care of that side of the business.

  EDGERTON does not personally know KYLEEN CANE or BRIAN CLARK. He does know that JOE LAXAGUE, his lawyer, worked for them at CANE CLARK LLP.

GOVERNMENT
EXHIBIT
**3500-TE-1**
14 CR 399 (S-1) (ENV)

Investigation on  12/01/2017  at  RENO, Nevada, United States (In Person)

File # ■■■■■  Date drafted  12/01/2017

by  Zachary Mckinney

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of (U) INTERVIEW OF TAYLOR EDGERTON , On 12/01/2017 , Page 2 of 3

EDGERTON knows JOE LAXAGUE. LAXAGUE took care of all the paperwork for NORTHWEST RESOURCES INC. EDGERTON does not know KAYLA DICKSON, BRYAN CLARK, or DAVID BEN-BASSAT.

EDGERTON did know his stock was being transferred to CUBED INC. He contacted LAXAGUE and told him he was looking for a way to get out of NORTHWEST RESOURCES INC. The company was a much bigger project than he anticipated and was going to cost a lot more money before they were able to start mining.

LAXAGUE contacted EDGERTON and told him he could get his initial investment back by transferring shares to CUBED INC.

EDGERTON didn't know he owned 21,630,000 shares of CUBED INC. He assumes it must have been his NORTHWEST RESOURCES INC. shares under a different name.

In return for getting rid of his CUBED INC. shares, EDGERTON received his original $20,000 investment.

EDGERTON doesn't know ALFRED RAPETTI, BRANISLAV GJORCEVSKI, DAVID DOUST, DOUG SHINSATO, JOHN MCDONELL, JOSEPH WHITE, or STEPHEN WHITE.

EDGERTON contacted LAXAGUE and said he wanted to start a mining company. LAXIGUE later got in touch with EDGERTON and said he found an opportunity . This opportunity would become NORTHWEST RESOURCES INC.

NORTHWEST RESOURCES was supposed to be a legitimate mining company, but it never got to the point of actually mining. The upfront investment ended up being too expensive.

The ultimate goal of NORTHWEST RESOURCES INC was to make money through the mining of gold and other precious metals.

LAXAGUE approached EDGERTON about NORTHWEST RESOURCES INC becoming CUBED INC. It was in response to EDGERTON wanting to get out of NORTHWEST RESOURCES INC.

EDGERTON assumes KYLEEN CANE became involved with NORTHWEST RESOURCES because she was LAXAGUE's boss and he told her about it.

CANE CLARK LLP handled the legal documents for NORTHWEST RESOURCES INC through EDGERTON's lawyer, LAXAGUE.

EDGERTON never communicated with KYLEEN CANE.

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of (U) INTERVIEW OF TAYLOR EDGERTON , On 12/01/2017 , Page 3 of 3

FD-302 (Rev 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

 Official Record

Date of entry  12/12/2017

MARCHE LAMONT GODFREY, date of birth (DOB) ███████ 1970, social security number ███ 7465, ██████████ Las Vegas, Nevada 89119-1856, ██████ 3430 (Cell), was interviewed at the Las Vegas FBI Field Office, 1787 West Lake Mead Boulevard, Las Vegas, Nevada 89106. After being advised of the identity of the interviewing Agent and the nature of the interview, GODFREY provided the following information:

GODFREY has been in Las Vegas about 17 years. Before that he lived in Oakland, California. GODFREY currently works as a bus driver for the Regional Transit Authority (RTA).

GODFREY was questioned regarding his investment(s) in Northwest Resources, Inc. and Cubed, Inc. The first question was whether he recalled investing in Northwest Resources, Inc. GODFREY did not know about this investment. GODFREY was then shown copies of a Subscription Agreement dated March 7, 2011, which indicated that he subscribed to 100,000 shares, a MoneyGram for $600.00 dated March 4, 2011, and a Prospectus of Northwest Resources, Inc. dated March 1, 2011. GODFREY stated that the handwriting and signature on the Subscription Agreement and the initials on the Prospectus were his; however, the writing and signature on the MoneyGram were not. The social security number on the Subscription Agreement was also wrong; the last four of his social security number are 7465 and not 4657. He did not know who TAYLOR EDGERTON was, even when shown the driver's license photo of EDGERTON.

GODFREY signed these documents at the Smith's Grocery Store at Camino Al Norte and Ann Road. There was a male individual who was standing outside the door talking to people as they entered and exited. He could not remember the individual's name, race or any other identifying characteristics. GODFREY did not remember how many other people might have been standing there with him. The individual stated that GODFREY might make money and might not. If he did, they would contact him and provide him with the money. GODFREY thought he was paid $40 to sign these documents.

---

Investigation on  12/11/2017  at  Las Vegas, Nevada, United States (In Person)

File #  ████████████   Date drafted  12/11/2017

by  T. Todd Tumbleson

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its to be distributed outside your agency.

GOVERNMENT EXHIBIT
**3500-MCG-1**
14 CR 399 (S-1) (ENV)

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of (U) Interview of Marche Lamont Godfrey in Las Vegas, Nevada ,On 12/11/2017 ,Page 2 of 3

   As stated above, GODFREY also looked at a copy of a MoneyGram for $600.00 and said that the writing on the document and the signature are all not his. To his knowledge, he never obtained such a MoneyGram or made such an investment. He did not invest in stocks, including microcap stocks, other than with his 401k at work. He did not invest in individuals stocks and did not have a brokerage account.

   GODFREY was also shown a document titled "Shareholders with Certificate Detail" and noted that he did reside at 714 Milano Drive but he no longer does. To his knowledge, GODFREY had never seen this document before.

   GODFREY was then asked if he was aware his stock in Northwest Resources, Inc. had been transferred to Cubed, Inc. He was unaware of any such transfer. GODFREY thus answered no to all of the questions regarding receiving a Cubed, Inc. stock certificate, particulars about the investment, when it started to trade publicly, owning restricted versus unrestricted stock, profit/loss, selling the stock, investment discussions, escrow accounts, etc.

   GODFREY had never heard of the law firm of Cane Clark LLP. He was unfamiliar with the names KYLEEN CANE, KAYLA DICKSON, JOE LAXAGUE or BRYAN CLARK.

   GODFREY was unaware that shares of Cubed, Inc. in his name were transferred to Oxbridge Technology Partners, Inc. GODFREY was shown a copy of an Irrevocable Stock Power evidencing this transfer. He stated that the handwriting appeared to be his, but the signature was not his. GODFREY thought he may have filled this out at the Smith's Grocery Store at the same time as the other documents except the signature part. GODFREY was unfamiliar with the copies of the PBS -- Corporate Trust Services Deposit/Withdrawal at Custodian form, a letter dated June 2, 2014, from Oxbridge Technology Parners, Inc., and Certificate Number 134 of Cubed, Inc.

   GODFREY was unfamiliar with the name DAVID BEN-BASSAT.

   GODFREY was unfamiliar with the names AL DISCALA, JOSEPH WHITE, STEPHEN WHITE, CRAIG JOSEPHBERG, or GEORGE CASTILLO.

   GODFREY was then shown the driver's license photograph of GARY SCOGGINS and did not recognize SCOGGINS.

FD-302 (Rev 5-8-10)

- 1 of 2 -

 OFFICIAL RECORD

# FEDERAL BUREAU OF INVESTIGATION

Date of entry  12/12/2017

GARY ANDRE EDWARD SCOGGINS, date of birth (DOB) ▮▮▮▮ 1980, social security number ▮▮▮ 6650, 10080 Clear Crystal Street, Las Vegas, Nevada 89183-6261, ▮▮▮▮ 5755 (Cell), was interviewed at the Starbucks at 9880 South Maryland Parkway, Las Vegas, Nevada 89183. This location is a short walk from SCOGGINS place of employment at Eclips Salon, 9770 South Maryland Parkway, Las Vegas, Nevada 89183, ▮▮▮▮ -4700. After being advised of the identity of the interviewing Agent and the nature of the interview, SCOGGINS provided the following information:

SCOGGINS was questioned regarding his investment(s) in Northwest Resources, Inc. and Cubed, Inc. The first question was whether he recalled investing in Northwest Resources, Inc. SCOGGINS initially did not remember this investment. When shown a copy of a check dated March 17, 2011, drawn on Wells Fargo Bank Account 0229815659 for $600.00 to "Northwest Resources, Inc." and a copy of a Subscription Agreement dated March 17, 2011, SCOGGINS stated that the handwriting and signatures were his, so it must have happened. Later in the interview SCOGGINS thought that Northwest Resources, Inc. may have been a silver mining operation or a company that cultivated land for resources. SCOGGINS understood the company was in Nevada. SCOGGINS used JOE LAXAGUE at Cane Clark LLP in Las Vegas near Warm Springs and Pecos to incorporate a company, Three-Wire Solutions, and SCOGGINS believed that LAXAGUE recommended this investment to him as "a winner." LAXAGUE told SCOGGINS that SCOGGINS was buying before the company went public. SCOGGINS invested based on trust in LAXAGUE. LAXAGUE's firm had been recommended by SCOGGINS' business partner in Three-Wire Solutions, WES SMITH. The last telephone number SCOGGINS had for SMITH was ▮▮▮▮ -2755. SMITH was a barber shop client and was about 35-40 years old.

Three-Wire Solutions was a telecom company formed for point of sale systems and other "low-voltage" operations. SMITH was the tech guy.

SCOGGINS had never heard of TAYLOR EDGERTON.

SCOGGINS had no knowledge of a company named Cubed, Inc., and he had no knowledge that his shares in Northwest Resources, Inc. had been

---

Investigation on  12/06/2017  at  Las Vegas, Nevada, United States (In Person)

File # 318C-NY-2939970  Date drafted 12/06/2017

by T. Todd Tumbleson

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and to be distributed outside your agency

**GOVERNMENT EXHIBIT**
**3500-GS-1**
14 CR 399 (S-1) (ENV)

FD-302a (Rev. 05-08-10)

318C-NY-2939970

Continuation of FD-302 of (U) Interview of Gary Andre Edward Scoggins in Las Vegas, Nevada ,On 12/06/2017 ,Page 2 of 2

transferred to this company. No further questions about Cubed, Inc. were thus asked.

Besides LAXAGUE, SCOGGINS did not recognize the names KYLEEN CANE, KAYLA DICKSON, and BRYAN CLARK.

SCOGGINS was then asked about whether he had ever received a $20,000 check from Cane Clark LLP, and he was unsure. He was then shown a copy of the check. He said that the signature on the back of the check was his. SCOGGINS thought that this amount was related to proceeds from the sale of a company that he had acquired. The company was not Cubed, Inc., however, since SCOGGINS thought he would have remembered that. The acquisition was handled by LAXAGUE, and SCOGGINS had to sign his interest over. SCOGGINS did not know what amount, if any, SMITH was paid. SCOGGINS did not remember the name of the company or to what entity it was sold. He did not remember why it was sold. He did not remember for how much the company was initially acquired or what the company did. He again just trusted LAXAGUE. SCOGGINS spoke with LAXAGUE several times after that on general business matters.

SCOGGINS had never heard of, or had contact with, DAVID BEN-BASSAT.

SCOGGINS had invested in microcap stocks before. Unrelated to any transactions with LAXAGUE, SCOGGINS invested one time based on advice from a friend in a headset company for $0.50/share. The company was coming out with some innovative headsets, but the headsets once released did not sell and SCOGGINS lost this money. He also invested several hundred dollars in Bitcoin that is now worth about $30,000. He has done well on that investment.

SCOGGINS had never heard of AJ DISCALA, JOSEPH WHITE, STEPHEN WHITE, CRAIG JOSEPHBERG or GEORGE CASTILLO.

SCOGGINS was then asked if he would testify under oath to the things he had just said, and he responded yes. He was then served with a trial subpoena. WASHINGTON was advised to contact the individual on the subpoena who would arrange to keep him apprised of the court date. He was also advised that his expenses would be paid as advised by the court contact.

FD-302 (Rev 5-8-10)  - 1 of 3 -    OFFICIAL RECORD

# FEDERAL BUREAU OF INVESTIGATION

Date of entry  12/12/2017

    CHAD DISHON WASHINGTON, date of birth (DOB ▇▇▇▇ 1986, social security numbe▇▇▇▇0146, ▇▇▇▇▇▇▇▇▇▇ Henderson, Nevada 89002, ▇▇▇▇4777 (Cell), was interviewed at the Las Vegas FBI Field Office, 1787 West Lake Mead Boulevard, Las Vegas, Nevada 89106. After being advised of the identity of the interviewing Agent and the nature of the interview, WASHINGTON provided the following information:

    WASHINGTON was questioned regarding his investment(s) in Northwest Resources, Inc. and Cubed, Inc. The first question was whether he recalled investing in Northwest Resources, Inc. WASHINGTON replied that he had no knowledge of any such investment. WASHINGTON was then shown a copy of a Subscription Agreement dated March 17, 2011, which indicated that he subscribed to 1,000,000 shares. WASHINGTON stated that the writing looked like his, as evidenced by the slash through the zeros, but was not his. The signature definitely was not his. He puts a dot above the "i" even when the "I" is with other letters in all caps. The document also has the wrong social security number of 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 (when the last four of his are 0146). He did not know who TAYLOR EDGERTON was, even when shown the driver's license photo of EDGERTON.

    As as a demonstration of his writing, WASHINGTON provided a Medical Examiner's Certificate card which had his writing in all caps at the bottom along with this signature. This card was photocopied, and the photocopy is included as 1A evidence.

    WASHINGTON also looked at a copy of a MoneyGram for $600 and said that the writing on the document and the signature are all not his. To his knowledge, he never obtained such a MoneyGram or made such an investment. He did not invest in stocks and was unfamiliar with the term "penny stocks" and "ticker symbol." He had mutual funds through his 401k at work at CalPortland Cement, and he sold some of those in the past for about $17,000 but he did not otherwise know even how to invest in individual stocks. He did not have a brokerage account.

---

Investigation on 11/30/2017 at Las Vegas, Nevada, United States (In Person)

File # 318C-NY-2939970   Date drafted 11/30/2017

by T. Todd Tumbleson

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and to be distributed outside your agency.


GOVERNMENT EXHIBIT
3500-CW-2
14 CR 399 (S-1) (ENV)

FD-302a (Rev. 05-08-10)

318C-NY-2939970

Continuation of FD-302 of (U) Interview of Chad Dishon Washington in Las Vegas, Nevada , On 11/30/2017 , Page 2 of 3

    WASHINGTON was also shown a copy of a document titled "Shareholders with Certificate Detail" and noted that he did reside at 7000 Paradise Road, the Cabana Club Apartments, but the apartment number was wrong. In about 2010 he stayed there for about five to six months. His roommates were his cousin, JAYCEE MCLAURIN, and KELLEN BUSH. He then went to Louisiana to live with this mother and then returned to a different apartment at the Cabana Club for about eight months until 2011. His roommates then were MCLAURIN and MICHAEL HARRIS. These apartments were numbers 2047 and 2048 and not number 102 as listed on the sheet.

    WASHINGTON had never seen the "Subscription Agreement" or "Prospectus."

    Since WASHINGTON was not aware of any initial investment in Northwest Resources, Inc., he was not aware of any stock transfer to Cubed, Inc. He was unfamiliar with this company. WASHINGTON thus answered no to all of the questions regarding receiving a Cubed, Inc. stock certificate, particulars about the investment, when it started to trade publicly, owning restricted versus unrestricted stock, profit/loss, selling the stock, investment discussions, escrow accounts, brokerage accounts, or investing in microcap stocks.

    WASHINGTON had never heard of the law firm of Cane Clark LLP. He was unfamiliar with the names KYLEEN CANE, KAYLA DICKSON, JOE LAXAGUE or BRYAN CLARK. WASHINGTON did know an individual named BRYAN CLARK, but the individual was not an attorney and lived in Las Vegas. WASHINGTON knew CLARK after JAYCEE MCLAURIN moved in with his former spouse at 1462 Orange Jubilee Road, Henderson, Nevada 89014, and CLARK would come over to watch a game. WASHINGTON never saw CLARK when he lived at the Cabana Club Apartments.

    WASHINGTON was unfamiliar with the name DAVID BEN-BASSAT. WASHINGTON was then shown a copy of a document titled "IRREVOCABLE STOCK POWER" dated on or about March 5, 2014. WASHINGTON stated that he had never seen this document before. The handwriting and signature were not his. The handwriting was close but not the same.

    WASHINGTON was unfamiliar with the names AL DISCALA, JOSEPH WHITE, STEPHEN WHITE, CRAIG JOSEPHBERG, or GEORGE CASTILLO.

    WASHINGTON was then shown the driver's license photographs of MARCHE GODFREY and GARY SCOGGINS and recognized SCOGGINS. WASHINGTON did not recognize SCOGGINS' name since he knew him by "Fat Mac," but he did recognize the picture. SCOGGINS was a barber from Arkansas. SCOGGINS was WASHINGTON's barber in about the 2006 to 2008 timeframe at a Headhunters

FD-302a (Rev 05-08-10)

318C-NY-2939970

Continuation of FD-302 of (U) Interview of Chad Dishon Washington in Las Vegas, Nevada , On 11/30/2017 , Page 3 of 3

barber shop at Eastern Avenue and Wigwam Avenue. WASHINGTON moved in 2008 so that is why he remembers the year. WASHINGTON went with SCOGGINS and some other barbers from the shop to a Silverado High School versus Liberty basketball game. He usually paid for his haircuts in cash but may have used a credit card. SCOGGINS said he wanted a house in the luxury area of Lake Las Vegas but was not able to pick anything up. To WASHINGTON's knowledge, SCOGGINS was single at the time.

WASHINGTON was then asked if he would testify under oath to the things he had just said, and he responded yes. He was then served with a trial subpoena. WASHINGTON was advised to contact the individual on the subpoena who would arrange to keep him apprised of the court date. He was also advised that his expenses would be paid as advised by the court contact.